## UNITED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KEVIN OLLIE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION No.** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF CONNECTICUT,** | : | |
| **Defendant** | : | |
| | : | **DECEMBER 17, 2018** |

### COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF
### AND ORDER PENDENTE LITE

## I.    INTRODUCTION

1. Plaintiff Kevin Ollie brings this action for emergency injunctive relief and an order
*pendente lite* to enjoin Defendant University of Connecticut from continuing to
discriminate and retaliate against him in violation of anti-discrimination statutes such as
Title VII of the Civil Rights Act of 1964 ("Title VII").  Defendant is unlawfully relying
on a provision in a collective bargaining agreement to deter Plaintiff from filing a
complaint of race discrimination with the Connecticut Commission on Human Rights and
Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission
("EEOC"), or in a judicial forum, including the federal courts.  After Plaintiff, through
his lawyers and union representatives, engaged in protected activity under the anti-
discrimination statutes by complaining about disparate treatment against Plaintiff as
compared to similarly situated Caucasian individuals employed by Defendant and alleged
violations of an anti-discrimination statute, and also communicated to Defendant, through
its counsel, that Plaintiff intended to file claims of discrimination with administrative
agencies such as the EEOC and the CHRO, Defendant discriminated and retaliated

against Plaintiff in order to deter Plaintiff from exercising his rights under state and federal law.

2. Defendant has maintained that, if Plaintiff files a complaint of discrimination with an administrative agency such as the EEOC, or files a complaint of discrimination in a judicial forum, Defendant will refuse to proceed with the contractual grievance-arbitration process that is currently underway between Plaintiff and his union, and Defendant.  Defendant's actions represent an unlawful effort to dissuade Plaintiff from exercising his rights under federal and state anti-discrimination statutes, and to prevent Plaintiff from filing claims under those statutes before the expiration of the statutes of limitations on those claims.

3. Through this action, Plaintiff is requesting that the Court take emergency injunctive and equitable action to enjoin Defendant's acts of discrimination and retaliation, including by ordering that:  (1) Article 10.3 of the collective bargaining agreement, as applied to the facts of this case and as relied upon by Defendant, violates Title VII; (2) if Plaintiff exercises his rights to file discrimination or retaliation claims under state or federal law in an administrative agency, or in a judicial forum, Defendant is enjoined from refusing to proceed with the grievance-arbitration currently proceeding under the collective bargaining agreement because Plaintiff has exercised those rights; and (3) Plaintiff's deadlines to file claims of discrimination under Title VII and the Connecticut Fair Employment Practices Act are equitably tolled as of December 17, 2018, and Defendant is equitably estopped from asserting a statute of limitations defense to those claims, if Plaintiff files those claims before a certain date reasonably established by this Court.

II.   **PARTIES**

4.   Plaintiff, Kevin Ollie, is an African-American individual residing in Connecticut.

5.   Defendant, University of Connecticut, is the flagship state university of the State of
Connecticut.

III.   **JURISDICTION**

6.   This Court has jurisdiction over this action because it presents a federal question under 28
U.S.C. § 1331.  The Court has jurisdiction over state law claims pursuant to 28 U.S.C. §
1367.

7.   The Court also has jurisdiction over this action under Conn. Gen. Stat. § 52-422 because
Plaintiff is seeking an order *pendente lite* as necessary to protect his rights during the
pendency of an arbitration.

IV.   **BACKGROUND**

8.   Plaintiff was formerly employed as the Head Coach of the Men's Basketball Program at
the University of Connecticut.

9.   On March 10, 2018, Defendant's Athletic Director, David Benedict, notified Plaintiff that
Defendant was initiating the process to terminate Plaintiff's employment.

10.   On April 6, 2018, Athletic Director Benedict issued a letter to Plaintiff providing more
information about the alleged reasons for Defendant's intention to terminate Plaintiff's
employment.

11.   On April 24, 2018, Athletic Director Benedict issued a written recommendation to
terminate Plaintiff's employment, which Plaintiff appealed to Defendant's President,
Susan Herbst.

12. On May 10, 2018, Plaintiff's union representative sent a letter on his behalf to President Herbst opposing the recommendation to terminate by Athletic Director Benedict. That letter to President Herbst raised issues of discrimination on Plaintiff's behalf.

13. For instance, the May 10, 2018 letter to President Herbst made reference to the Connecticut Fair Employment Practices Act, which is the statute in Connecticut which prohibits discrimination in employment. The section of the May 10, 2018 letter to President Herbst under the subject heading that included a reference to the Connecticut Fair Employment Practices Act included an extensive discussion of the "disparate treatment" to which Defendant was subjecting Plaintiff, a black male, as compared to Coach Jim Calhoun, a white male, and also used the term discrimination. That section of the letter also stated, "the purpose of introducing an appropriate comparator is to point out the University's unfair and disparate treatment of similarly situated employees under the CBA, as well as state and federal law." That section of the letter also cited to court decisions in which an employer's disparate treatment of similarly situated employees was used to prove discrimination.

14. Through this May 10, 2018 letter, and other communications, Defendant had knowledge of Plaintiff's allegations of discrimination, which constituted protected activity under Title VII and other anti-discrimination statutes.

15. On June 19, 2018 Defendant's President, Susan Herbst, upheld the termination of Plaintiff's employment.

16. During his employment with Defendant, Plaintiff was a member of a union, The University of Connecticut Chapter of the American Association of University Professors (hereinafter "union").

4

17. The operative collective bargaining agreement between Plaintiff's union and Defendant includes Article 10, Contractual Grievance Procedure, which sets forth the process that the union and Defendant agreed to follow to resolve disputes concerning the interpretation or application of the terms or provisions of the collective bargaining agreement.

18. The contractual grievance procedure outlined in the collective bargaining agreement is a benefit, term, and condition that is part and parcel of the employment relationship between Plaintiff and Defendant.

19. Article 10.3 of the operative collective bargaining agreement between the union and Defendant states:

> 10.3    Resort to Other Procedure
>
> If prior to seeking resolution of a dispute by filing a grievance under this contract, or while the grievance proceeding is in progress, a member seeks to resolve the matter in any other forum, whether administrative or judicial, the Board shall have no obligation to entertain or proceed with this grievance procedure.  For the purpose of this Agreement, however, the parties agree that a complaint filed by a UConn-AAUP member with the University of Connecticut's Office of Institutional Equity or Office of Audit Compliance and Ethics are internal investigatory procedures and the member shall retain all rights to proceed with the Article 10 grievance process.

20. Following the termination of his employment with Defendant, Plaintiff's union filed a grievance claiming that Defendant terminated Plaintiff's employment without just cause in violation of the operative collective bargaining agreement (hereinafter "the grievance").

21. The grievance filed by the union pursuant to Article 10 has been assigned to an arbitrator, and the parties are proceeding with the arbitration process.

22. However, the actual arbitration will not be fully adjudicated and decided until after the last possible date to file with the CHRO/EEOC.

23. Importantly, the arbitration will not include any claims of discrimination or retaliation, or allege any violations of any state or federal anti-discrimination statutes.  Rather, Plaintiff expects that the arbitration will be limited to a claim that Defendant violated the operative collective bargaining agreement by terminating Plaintiff without just cause as defined by the collective bargaining agreement.

24. However, Plaintiff contends that, in addition to terminating his employment without just cause in violation of the operative collective bargaining agreement, Defendant has also discriminated against him on the basis of his race and color in violation of federal and state law, including Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA").

25. Defendant has treated Plaintiff much differently, and much less favorably, than it has treated other similarly situated Caucasian employees, and has advance pretextual reasons to support the termination of Plaintiff's employment.

26. For instance, the previous Head Coach of Defendant's Men's Basketball Program, Jim Calhoun, was found to have engaged in conduct in violation of NCAA rules and regulations following in an investigation conducted by the NCAA and Defendant in 2011 and 2012 that was more severe than the conduct which Defendant has identified as the basis for its decision to terminate Plaintiff's employment, but Defendant never terminated the employment of Jim Calhoun.  Indeed, Defendant continued to employ Jim Calhoun and paid him more $1.9 MM between 2012 and September of 2018.

27. Coach Jim Calhoun is Caucasian.

28. In order to proceed with claims of discrimination under Title VII and the CFEPA, employees are generally required to exhaust their administrative remedies by filing claims with the U.S. Equal Employment Opportunity Commission ("EEOC"), and the Connecticut Commission on Human Rights and Opportunities ("CHRO").

29. Pursuant to a work sharing agreement, and by operation of law, the CHRO has the ability to process and adjudicate claims of discrimination under Title VII, in addition to discrimination claims under CFEPA.

30. Under applicable law, the deadlines to file claims with those administrative agencies is 300 days and 180 days, respectfully.

31. Under the facts of this case, 180 days from the date of President Herbst's letter is December 16, 2018 and so the last timely date to file administratively with the CHRO is no later than December 17, 2018.  The time to file with the EEOC could be as early as January 4, 2019.

32. In this case, the grievance will not be decided through the arbitration process described in Article 10 of the collective bargaining agreement until after the deadlines to file claims under Title VII and the CFEPA with the appropriate administrative agencies have already expired.

33. Through the May 10, 2018 letter from Plaintiff's union to President Herbst, as well as other communications, Defendant had knowledge of Plaintiff's allegations of discrimination, which constituted protected activity under Title VII and other anti-discrimination statutes.

34. In advance of the expiration of Plaintiff's deadline to file discrimination claims with EEOC and CHRO, Plaintiff, through his union representatives and legal counsel,

communicated to Defendant, through its legal counsel, that Plaintiff intended to file claims of discrimination with the appropriate administrative agencies, and requested that Defendant agree to not invoke Article 10.3 of the collective bargaining agreement based on the filing of those discrimination claims.

35. On October 30, 2018, Plaintiff's counsel and the Executive Director of the union Michael Bailey met with Nicole Gelston, General Counsel of the University of Connecticut, and Gabriel Jiran, outside counsel representing the University of Connecticut in this arbitration.  The purpose of the meeting was to discuss issues related to the arbitration.

36. At the meeting on October 30, 2018, Plaintiff's counsel raised the issue of exhaustion of administrative remedies in the context of Article 10.3 and asked that Defendant agree that a filing with the CHRO/EEOC with a request to stay CHRO/EEOC proceedings pending the result of the arbitration, simply to preserve the right to proceed in that forum following the arbitration, would not result in the Defendant invoking Article 10.3 of the collective bargaining agreement.  In the alternative, Plaintiff's counsel requested that Defendant consent to allowing the arbitrator to address this issue as a preliminary matter. The parties also discussed other arbitration issues.  At the end of the meeting, Defendant responded that it would inform Plaintiff of its decision regarding the CHRO/EEOC issue.

37. Defendant did not promptly respond to Plaintiff's proposal regarding filing with CHRO/EEOC combined with a stay, nor did Defendant promptly respond to Plaintiff's request to submit the CHRO/EEOC issue to the arbitrator.

38. On or about November 15, 2018, having not heard back from Defendant regarding its position on the CHRO/EEOC issue, Plaintiff proposed a tolling agreement to Defendant

that would extend the time to file with the CHRO/EEOC to a date 30 days following the completion of the arbitration.

39. On November 25, 2018, Attorney Jiran communicated regarding  issues relating to the arbitration process, but did not provide any information regarding the Defendant's position regarding the tolling agreement, nor did Defendant provide consent to take the CHRO/EEOC issue to the arbitrator.

40. Defendant did not respond to the request for the tolling agreement until December 4, 2018, denying Plaintiff's request.  Defendant did not respond to the request to take the matter to the arbitrator.

41. On or about December 10, 2018, Plaintiff again reached out to the Defendant regarding Plaintiff's request to bring the CHRO/EEOC issue to the arbitrator.

42. On or about December 12, 2018, Attorney Jiran informed counsel for Plaintiff that Defendant would not agree to bring the CHRO/EEOC matter to the arbitrator.

43. On December 16, 2018, Attorney Jiran informed counsel for Plaintiff that Defendant would not agree to stipulate that Defendant would not raise Article 10.3 of the collective bargaining agreement if Plaintiff filed charges with CHRO/EEOC to preserve his discrimination claims.

44. Thus, Plaintiff has offered, through counsel, a tolling agreement and/or a willingness to simply file his claims of discrimination under Title VII and the CFEPA with the appropriate administrative agencies to preserve his rights before the expiration of the applicable statutes of limitations, and then agree to stay those claims once filed until after the resolution of the arbitration.

45. However, Defendant has refused to enter into a tolling agreement and has refused to agree that it will continue to arbitrate the grievance if Plaintiff files his Title VII claim with the EEOC. Defendant has refused to agree that it will not invoke Article 10.3 of the operative collective bargaining agreement and decline to proceed with the arbitration of the grievance if Plaintiff files his Title VII claim with the EEOC.

46. Defendant has also refused to enter into a tolling agreement and has refused to agree that it will continue to arbitrate the grievance if Plaintiff files his CFEPA claim with the CHRO. Defendant has refused to agree that it will not invoke Article 10.3 of the operative collective bargaining agreement and decline to proceed with the arbitration of the grievance if Plaintiff files his CFEPA claim with the CHRO.

47. Judicial intervention is necessary to protect Plaintiff's interests and preserve Plaintiff's right to pursue his claims of discrimination under Title VII before the expiration of the statute of limitations.

48. Judicial intervention is necessary to protect Plaintiff's interests and preserve Plaintiff's right to pursue his claims of discrimination under CFEPA before the expiration of the statute of limitations.

49. Absent judicial intervention, Plaintiff will suffer irreparable harm because the statutes of limitations for Plaintiff to file his claims under discrimination with the appropriate administrative agencies will expire.

**<u>COUNT ONE</u>:          INJUNCTIVE & EQUITABLE RELIEF REGARDING
                              VIOLATION OF TITLE VII**

50. Based on the foregoing, Defendant is violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

51. Plaintiff is an African-American male and is a member of a protected class under Title VII.

52. Plaintiff engaged in protected activity by communicating to Defendant, through his union representatives and legal counsel, allegations of discrimination and disparate treatment, including allegations based on disparate treatment of Plaintiff and other similarly situated Caucasian males.

53. Plaintiff also engaged in protected activity by communicating to Defendant, through his representatives and legal counsel, that he intended to file discrimination claims with CHRO and EEOC, including discrimination claims under Title VII.

54. Defendant had knowledge of Plaintiff's protected activity, and Defendant has taken adverse actions against Plaintiff in response to that protected activity.

55. After Defendant had knowledge of Plaintiff's protected activity, Defendant engaged in a series of actions to deter Plaintiff from filing discrimination claims under Title VII with CHRO and EEOC and exercising his rights to pursue his claims of discrimination against Defendant.

56. For instance, Defendant has refused to agree that it will not invoke Article 10.3 of the collective bargaining agreement if Plaintiff files discrimination claims with CHRO, EEOC, or in a judicial forum.  By taking that position, Defendant is asserting the right to refuse to proceed with the grievance-arbitration process under the collective bargaining agreement if Plaintiff exercises his rights to file discrimination claims in an administrative agency or in a judicial forum.

57. Defendant's actions are intended to dissuade Plaintiff from exercising his rights to file discrimination claims in an administrative or judicial forum until after the arbitration

under the collective bargaining agreement has concluded, by which time Plaintiff's statute of limitations under Title VII and CFEPA will have lapsed, and Plaintiff will be unable to assert claims under those statutes.

58. Defendant has also refused to agree to other measures that would allow Plaintiff to preserve his rights to file discrimination claims under Title VII and CFEPA, such as an agreement to toll the statute of limitations for those claims until after the conclusion of the pending arbitration.

59. Defendant has also refused to allow this issue to be presented to the arbitrator.

60. Plaintiff has been harmed by Defendant's actions because, absent judicial intervention, if Plaintiff is deterred from filing his discrimination claims until after the conclusion of the arbitration, Plaintiff will be unable to pursue claims under Title VII and CFEPA because the statute of limitations will have expired.

61. Plaintiff has been harmed by Defendant's actions because, absent judicial intervention, if Plaintiff files his discrimination claims under Title VII and CFEPA in order to preserve his rights under those statutes before the expiration of the statutes of limitations, Defendant will invoke Article 10.3 of the collective bargaining agreement and refuse to proceed with the arbitration of the collective bargaining agreement, and thereby depriving Plaintiff and his union with the ability to enforce Plaintiff's rights under the collective bargaining agreement and obtain a remedy for Defendant's violation of Plaintiff's rights under the collective bargaining agreement.

62. Plaintiff will suffer irreparable harm in the absence of injunctive relief from the Court because he will either lose his ability to pursue his discrimination claims as a result of the expiration of applicable statute of limitations, or he will lose the ability to proceed with

claims in arbitration based on Defendant's violation of the collective bargaining agreement.

63. Plaintiff is likely to prevail on the merits on the question of whether Defendant's actions violate Plaintiff's rights under Title VII.

64. Accordingly, injunctive relief is appropriate.

65. Equitable relief to toll the statute of limitations is also appropriate, including, but not limited to, because Plaintiff has been diligent in trying to preserve his rights to file discrimination claims, but Defendant has acted to deter Plaintiff from exercising those rights.

**COUNT TWO:      INJUNCTIVE & EQUITABLE RELIEF REGARDING VIOLATION OF CFEPA**

66. Based on the foregoing, Defendant is violating Plaintiff's rights under CFEPA.

67. Plaintiff is an African-American male and is a member of a protected class under CFEPA.

68. Plaintiff engaged in protected activity by communicating to Defendant, through his union representatives and legal counsel, allegations of discrimination and disparate treatment, including allegations based on disparate treatment of Plaintiff and other similarly situated Caucasian males.

69. Plaintiff also engaged in protected activity by communicating to Defendant, through his representatives and legal counsel, that he intended to file discrimination claims with CHRO and EEOC, including discrimination claims under CFEPA.

70. Defendant had knowledge of Plaintiff's protected activity, and Defendant has taken adverse actions against Plaintiff in response to that protected activity.

71. After Defendant had knowledge of Plaintiff's protected activity, Defendant engaged in a series of actions to deter Plaintiff from filing discrimination claims with CHRO and EEOC and exercising his rights to pursue his claims of discrimination against Defendant.

72. For instance, Defendant has refused to agree that it will not invoke Article 10.3 of the collective bargaining agreement if Plaintiff files discrimination claims with CHRO, EEOC, or in a judicial forum.  By taking that position, Defendant is asserting the right to refuse to proceed with the grievance-arbitration process under the collective bargaining agreement if Plaintiff exercises his rights to file discrimination claims in an administrative agency or in a judicial forum.

73. Defendant's actions are intended to dissuade Plaintiff from exercising his rights to file discrimination claims in an administrative or judicial forum until after the arbitration under the collective bargaining agreement has concluded, by which time Plaintiff's statute of limitations under Title VII and CFEPA will have lapsed, and Plaintiff will be unable to assert claims under those statutes.

74. Defendant has also refused to agree to other measures that would allow Plaintiff to preserve his rights to file discrimination claims under Title VII and CFEPA, such as an agreement to toll the statute of limitations for those claims until after the conclusion of the pending arbitration.

75. Defendant has also refused to allow this issue to be presented to the arbitrator.

76. Plaintiff has been harmed by Defendant's actions because, absent judicial intervention, if Plaintiff is deterred from filing his discrimination claims until after the conclusion of the arbitration, Plaintiff will be unable to pursue claims under Title VII and CFEPA because the statute of limitations will have expired.

77. Plaintiff has been harmed by Defendant's actions because, absent judicial intervention, if Plaintiff files his discrimination claims under Title VII and CFEPA in order to preserve his rights under those statutes before the expiration of the statutes of limitations, Defendant will invoke Article 10.3 of the collective bargaining agreement and refuse to proceed with the arbitration of the collective bargaining agreement, and thereby depriving Plaintiff and his union with the ability to enforce Plaintiff's rights under the collective bargaining agreement and obtain a remedy for Defendant's violation of Plaintiff's rights under the collective bargaining agreement.

78. Plaintiff will suffer irreparable harm in the absence of injunctive relief from the Court because he will either lose his ability to pursue his discrimination claims as a result of the expiration of applicable statute of limitations, or he will lose the ability to proceed with claims in arbitration based on Defendant's violation of the collective bargaining agreement.

79. Plaintiff is likely to prevail on the merits on the question of whether Defendant's actions violate Plaintiff's rights under CFEPA.

80. Accordingly, injunctive relief is appropriate.

81. Equitable relief to toll the statute of limitations is also appropriate, including, but not limited to, because Plaintiff has been diligent in trying to preserve his rights to file discrimination claims, but Defendant has acted to deter Plaintiff from exercising those rights

**PRAYER FOR RELIEF**

Plaintiff requests that the Court order the following injunctive and equitable relief:

1. Enjoin Defendant from refusing to proceed with the grievance-arbitration process under the collective bargaining agreement, or from taking any other adverse action against Plaintiff, if Plaintiff exercises his right to file a discrimination or retaliation claim under state or federal law in an administrative agency or judicial forum; and

2. Equitably toll the statute of limitations for Plaintiff to file claims under Title VII and CFEPA as of December 17, 2018, and equitably estop Defendant from asserting a statute of limitations defense to those claims as long as they are filed by a date reasonably established by the Court.

PLAINTIFF,
KEVIN OLLIE


By: _/s/ Todd D. Steigman_
      Jacques J. Parenteau (ct 09771)
      jparenteau@mppjustice.com
      William G. Madsen (ct09853)
      wmadsen@mppjustice.com
      Todd Steigman (ct26875)
      tsteigman@mppjustice.com
      Madsen, Prestley & Parenteau, LLC
      402 Asylum Street
      Hartford, CT 06103
      (860) 246-2466 (tel.)
      (860) 246-1794 (fax)

## UNITED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KEVIN OLLIE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION No.** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF CONNECTICUT,** | : | |
| **Defendant** | : | |
| | : | **DECEMBER 17, 2018** |

### DECLARATION OF KEVIN OLLIE

1. My name is Kevin Ollie and I am the Plaintiff named in the above-captioned case.

2. I have reviewed the factual allegations set forth in the document entitled "Complaint for Emergency Injunctive Relief and Order Pendente Lite," dated December 17, 2018 and filed by my attorneys on this date (hereinafter "Complaint").

3. Based on my own personal knowledge, non-privileged information provided by counsel, and a review of documents and communications concerning the arbitration proceedings in which I was not a direct participant, I verify under penalty of perjury that the factual allegations in the Complaint are true and correct.

Executed on December 17, 2018 at Hartford, Connecticut.

Kevin Ollie