UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| KEVIN OLLIE | Civil Action No.: 3:18-CV-02070 |
|---|---|
| Plaintiff, | |
| v. | |
| UNIVERSITY OF CONNECTICUT | |
| Defendant | December 27, 2018 |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

On December 17, 2018, the Plaintiff in this case, Kevin Ollie, filed a Complaint and an Emergency Motion for Preliminary Injunction and Application for Pendente Lite Relief without any notice to the Defendant, the University of Connecticut ("the University"). Despite frequent communication between the parties, including a telephone conference just minutes before the Motion was filed, counsel for Ollie did not provide any notice to the University of the impending Motion and chose to file it *ex parte* in an apparent attempt to deprive the University of the opportunity to be heard. Fortunately, the Court denied the Motion in its entirety and has provided the University with the opportunity to respond. For the reasons that follow, the Complaint must be dismissed because the Complaint does not state a claim upon which relief can be granted, the Court lacks subject matter jurisdiction, and Ollie has failed to join a necessary party.

### II. FACTUAL BACKGROUND

The following statement of facts contains the factual allegations from Ollie's Complaint that are relevant to this Motion. The University does not concede the facts or the legal

conclusions as alleged in Ollie's Complaint, but accepts the facts only for the purposes of this Motion to Dismiss. Ollie was previously employed by the University as the Head Coach of its Men's Basketball Program. (Complaint at ¶ 8). While employed by the University, Ollie was a member of the University of Connecticut Chapter of the American Association of University Professors ("the Union"). *Id.* at ¶ 16. The University and the Union are parties to a collective bargaining agreement. *Id.* at ¶ 17. The agreement contains a grievance procedure for resolving disputes, as well as the provision that is the subject of this case, Section 10.3.[1] That section states in relevant part:

> If prior to seeking resolution of a dispute by filing a grievance under this contract, or while the grievance proceeding is in progress, a member seeks to resolve the matter in any other forum, whether administrative or judicial, the Board shall have no obligation to entertain or proceed with this grievance procedure. For the purposes of this Agreement, however, the parties agree that a complaint filed by a UConn-AAUP member with the University of Connecticut's Office of Institutional Equity or Office of Audit Compliance and Ethics are internal investigatory procedures and the member shall retain all rights to proceed with the Article 10 grievance process.

*Id.* at ¶ 19. The first sentence of the foregoing language has been in the collective bargaining agreement since at least 2007, but the parties agreed to add the last sentence in 2017. (Exhibit 1).

On March 10, 2018, the University's Athletic Director, David Benedict, notified Ollie that the University was initiating the process to terminate Ollie's employment. *Id.* at ¶ 9. On April 24, 2018, Athletic Director Benedict issued a written recommendation to terminate Ollie's employment. *Id.* at ¶ 11. The Union appealed Athletic Director Benedict's action to

---

[1] In his pleadings, Ollie refers to this provision as "Article 10.3." However, the agreement does not contain any such article. Instead, it has an Article 10 that includes several sections, including Section 10.3. The University will therefore properly refer to this provision as "Section 10.3".

2

University President Susan Herbst. *Id.* at ¶ 12. On June 19, 2018, President Herbst upheld the termination of Ollie's employment. *Id.* at ¶ 15. The Union thereafter filed a grievance regarding Ollie's termination pursuant to the grievance procedure in the collective bargaining agreement. *Id.* at ¶ 20; *see also id.* at ¶ 17. The grievance has since advanced to arbitration. *Id.* at ¶ 21.

On October 30, 2018, Ollie's attorney asked the University to waive Section 10.3 of the collective bargaining agreement if Ollie filed a discrimination claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") or the U.S. Equal Employment Opportunities Commission ("EEOC"). *Id.* at ¶ 36. During subsequent communications, the University did not agree to Ollie's attorney's proposal. *Id.* ¶¶ 37-40. On December 16, 2018, the University's attorney informed Ollie's attorney that the University would not agree not to waive its rights under Section 10.3 if Ollie filed a claim with the CHRO or the EEOC. *Id.* ¶ 43. Notably, Ollie has not provided any information that the University said that it <u>would</u> invoke Section 10.3, nor does he allege that the University has actually invoked Section 10.3. For example, he only provided a written communication wherein the University declined to waive its rights under Section 10.3. (Memorandum in Support of Motion, Exhibit 3). To date, Ollie has not filed a claim with the CHRO or the EEOC, and the statute of limitations for filing with the CHRO has expired based on Ollie's own inaction. (Complaint at ¶ 31).

### III. ARGUMENT

#### A. The Complaint Should Be Dismissed For Failure To State A Claim.

Ollie does not set forth a claim for relief under any independent cause of action in his Complaint. Ollie only seeks the relief requested, without an underlying claim that is viable or

justiciable. Consequently, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

A motion to dismiss for failure to state a claim tests only the adequacy of the complaint. *United States v. City of N.Y.*, 359 F.3d 83, 87 (2d Cir. 2004). In deciding a motion to dismiss under Rule 12(b)(6), the court takes the allegations of the complaint as true and construes them in a manner favorable to the plaintiff. *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005). Although the court is obligated to accept as true all factual allegations in the complaint and reasonable inferences, a complaint should be dismissed when the facts pled and reasonable inferences are legally insufficient to support the cause of action pled. *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490 (D. Conn. 2007).

Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006). Instead, a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds*, 556 U.S. 662. The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint is insufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" and merely restates elements of a cause of action and imposes labels and conclusions. *Id.* (citation omitted).

In his Complaint, Ollie does not raise any independent causes of action upon which relief may be granted. Instead, he seeks a preliminary injunction and equitable relief, but both of these remedies are only available as ancillary to an actual cause of action. Furthermore, even if a preliminary injunction or a request for equitable tolling or equitable estoppel constituted a cause of action,[2] Ollie has not established a minimal legal basis for granting either remedy. As explained in the University's Opposition filed simultaneously with this Motion, Ollie's request for a preliminary injunction and for equitable relief both fail as a matter of law. Because Ollie's Complaint rests entirely on these two remedies, their legal insufficiency requires that the entire Complaint be dismissed for failure to state a claim.

Ollie's passing reference to pendente lite relief under Conn. Gen. Stat. § 52-422 is insufficient to avoid dismissal under Fed. R. Civ. P. 12(b)(6). Ollie makes no effort in his Complaint to state a claim for relief under this statute. Furthermore, as discussed below, Ollie cannot state a claim because he lacks standing to seek pendente lite relief. Even if Ollie had standing to invoke Section 52-422, his claim fails as a matter of law.[3] Because Ollie has failed to state a claim for relief under any cognizable cause of action, Ollie's Complaint should be dismissed in its entirety.

---

[2] In addition, even if these remedies constituted causes of action, they would raise a serious question about the Court's jurisdiction over this matter because these remedies by themselves do not pose a federal question. Ollie's references to Title VII are insufficient because Ollie has not exhausted his administrative remedies, and the cases he cites that he claims permit injunctive relief prior to exhaustion are inapplicable because the plaintiffs there had already filed a charge with the EEOC. *See* Ollie Memorandum in Support, at 9, and cases cited therein.

[3] If Ollie could state a claim for relief under Conn. Gen. Stat. § 52-422, that alone would not avoid dismissal because, in the absence of diversity or a federal question, the Court would have no basis for exercising supplemental jurisdiction under 28 U.S.C. § 1367.

5

### B. The Court Lacks Subject Matter Jurisdiction Over This Action.

An essential prerequisite to any case is that the court have jurisdiction over the subject matter, and Rule 12(b)(1) of the Federal Rules of Civil Procedure requires that a court dismiss a cause of action if it lacks jurisdiction over the subject matter. *See Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005). "Litigants cannot waive subject matter jurisdiction by express consent, conduct, or estoppel." *Wills v. Ferrandino*, 830 F. Supp. 116, 123 (D. Conn. 1993). In deciding a motion to dismiss under Rule 12(b)(1), the district court must "[c]onstru[e] all ambiguities and draw[] all inferences" in the plaintiff's favor. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction." *Matos v. U.S. Dep't of Hous. & Urban Dev.*, 995 F. Supp. 48, 49 (D. Conn. 1997) (citing *Land v. Dollar,* 330 U.S. 731 (1947)).

Furthermore, the significant jurisdictional issues must be addressed before the Court can consider Ollie's pending Motion for Preliminary Injunction and Application for Pendente Lite Relief. *See Visual Sciences, Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981). As the Second Circuit noted in *Visual Sciences*, "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Id.* (internal quotation marks and citations

omitted). Ollie has not done so here. For the reasons that follow, dismissal is necessary due to the Court's lack of subject matter jurisdiction over the Complaint.

### 1. This Dispute Is Not Ripe For Adjudication.

In order to be justiciable, a cause of action must be ripe. In other words, it must present "a real, substantial controversy, not a mere hypothetical question." *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993). A claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). The ripeness doctrine has its genesis in both the limitations on judicial power under Article III of the Constitution, as well as prudential reasons for not exercising jurisdiction. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). From a constitutional perspective, the ripeness standard is a limitation on judicial authority, and requires (1) that the plaintiff has actually suffered an injury in fact; (2) a causal connection exists between the injury and the conduct at issue; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687–88, 691 (2d Cir. 2013). In contrast, prudential ripeness is a tool that courts may use to avoid getting involved in issues that may be premature or unnecessary for adjudication. *Simmonds v. INS*, 326 F.3d 351, 356–57 (2d Cir. 2003).

In the present case, Ollie does not present a real or substantial controversy with regard to his claim for injunctive relief. The thrust of his argument is that the Court should enjoin the University from invoking Section 10.3 of the collective bargaining agreement because it would prevent him from filing a charge of discrimination, or alternatively would deprive him of the

right to pursue his arbitration. However, the undeniable fact is that the University has not invoked Section 10.3, and Ollie has not even filed a charge of discrimination upon which the University could invoke Section 10.3. In fact, the University has never stated that it will invoke Section 10.3. As can be seen from Ollie's own document attached to his Memorandum in Support, his union asked whether the University would waive its rights under Section 10.3, and the University simply responded that it would not waive its rights under that section. (Memorandum in Support of Motion, Exhibit 3). The University bargained with the Union for the provisions of Section 10.3, and was not compelled to relinquish a contractual right.

The distinction between declining to waive a right and affirmatively asserting that right is significant in this context. As stated above, the University did not invoke its right under Section 10.3, and had no reason to do so given that Ollie never filed a discrimination charge. In contrast, by declining to waive its Section 10.3 right, the University simply preserved the status quo under the collective bargaining agreement as it had existed for years prior to Ollie's termination. The University did not take any action to change the collective bargaining agreement or the rights of the parties under that agreement. Instead, the University maintained its option under Section 10.3 as had been agreed to by the University and the Union through the collective bargaining process. Ollie's attempt to place blame on the University for refusing to waive its bargained right is meritless, particularly given that Ollie is not himself a party to the collective bargaining agreement. As will be discussed further below, Ollie is basically trying to invalidate language in the collective bargaining agreement between the University and the Union. The University cannot be faulted for abiding by that agreement.

Based on the foregoing, Ollie has not suffered an injury in fact, as is required by the ripeness doctrine. He has not filed a discrimination complaint, nor has the University precluded him from doing so. Therefore, his claim of an injury is completely speculative and based on future events that may or may not occur. In this sense, the question presented is a hypothetical that is not based on a real or substantial controversy, which is the exact definition of a matter that is not ripe. *See AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993). The situation would be much different if he had filed a claim of discrimination. At that point, the University would have to review the charge compared to the claims at issue in the arbitration, and then decide whether to invoke Section 10.3. If, and only if, the University invoked Section 10.3 to preclude Ollie from arbitrating his case, then he would have an argument that he suffered an injury by not being able to pursue his arbitration at the same time as his discrimination claim. Of course, the University does not concede that any such argument would be successful, but the question is completely speculative at this point.

Ollie's end goal in this case appears to be that he wants to arbitrate his claim, see how that arbitration turns out, and then be able to file a discrimination charge if he is not satisfied with the result. That is one of the scenarios that Section 10.3 was designed to avoid. If Ollie truly believes that he was discriminated against, he should have filed a charge within the statute of limitations. As can be seen from the present dispute, he is represented by experienced counsel who know how to file for injunctive relief, and he could have just as easily sought such relief after filing his discrimination charge if the University decided to invoke Section 10.3. Instead, he slept on his rights for anywhere from six to nine months and still has not filed a charge or given this Court an active dispute to consider.

The present case is exactly what the ripeness doctrine was meant to avoid. As the Second Circuit has held, the requirement that a dispute must be ripe "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (quotation marks, brackets, and citations omitted). The injury at issue must be "imminent rather than conjectural or hypothetical." *Id.* Based on this standard, this matter is not ripe for adjudication, and the Court thus lacks subject matter jurisdiction.

### 2. The Request For Injunctive Relief Is Moot.

Even if this matter is ripe for adjudication, Ollie's request for an injunction to preclude the University from invoking Section 10.3 is moot with respect to discrimination claims under Connecticut state law because the applicable statute of limitations has already expired. As the Second Circuit has held, "[m]ootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies; a case is moot if the parties lack a legally cognizable interest in the outcome of the case." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010); *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). A party lacks a legally cognizable interest in the outcome of a case when "interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998); *Ferranti v. Gilfillan*, No. CIV.A.3:04CV339 (CFD), 2005 WL 1366446, at *1 (D. Conn. May 31, 2005). Mootness thus deprives the court of subject matter jurisdiction even if the matter was an active claim when the complaint was filed. "[I]t is not enough that a dispute was very much alive when suit was filed; the parties

must continue to have a personal stake in the ultimate disposition of the lawsuit." *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *2 (D. Conn. Mar. 15, 2017) (internal quotations omitted). In other words, "[w]hen the issues in dispute between the parties are no longer live, a case becomes moot." *Tanasi v. New All. Bank*, 786 F.3d 195, 198 (2d Cir. 2015), as amended (May 21, 2015) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005)).

According to Ollie's Complaint, he had 180 days to file his discrimination complaint with the CHRO. (Complaint at ¶ 31). Further, Ollie alleges that this time period expired on December 17, 2018. *Id.*[4]; *see also Conn. Gen. Stat. § 46a-82(f)*. Despite knowing as early as March 10, 2018 that his termination was being initiated, Ollie inexplicably did not file any charges of discrimination and instead waited until what he believed was the absolute last possible date to file his Complaint and Motion for injunctive relief to toll the statute of limitations. This Court denied the Motion on December 17, 2018. Therefore, the statute of limitations has now passed and Ollie is precluded from filing a charge with the CHRO. However, Ollie requests the Court to enjoin the University from asserting its contractual rights under Section 10.3, which he claims would prevent him from filing a CHRO charge. Because any such charge would be untimely, the request for injunctive relief is moot as to a CHRO charge. Stated differently, even if the Court grants the requested relief and enjoins the University from invoking Section 10.3, Ollie would not be able to file a charge with the CHRO because the statutory timeframe has already passed. The Court therefore cannot grant Ollie the

---

[4] The University is not conceding that this is the correct date for the purposes of determining the CHRO's jurisdiction. As Ollie appears to recognize, the actual date to trigger the 180 day period may have been much earlier given that he alleges that the 300 day period for filing with the EEOC could expire as early as January 4, 2019. (Complaint at ¶ 31).

relief he requests given the expiration of the statute of limitations. Consequently, the Court does not have subject matter jurisdiction and dismissal is mandated.

### 3. Ollie Lacks Standing To Seek Pendente Lite Relief And The Court Lacks Jurisdiction To Award Such Relief.

In his Complaint, Ollie also seeks relief under Conn. Gen. Stat. § 52-422, but he does not have standing to pursue a claim under that statute. (Complaint at ¶ 7). Notably, Ollie cites only to a portion of this statute in his memorandum, and the entire statute is as follows:

> At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, any judge thereof, *upon application of any party to the arbitration*, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

Conn. Gen. Stat. § 52-422 (emphasis added). The italicized phrase makes clear that only a party to the underlying arbitration may utilize the statute to seek pendente lite relief. By its own terms, the statute cannot be invoked by Ollie.

The parties to the underlying arbitration proceeding are the University and the Union. (Exhibit 2). Conveniently, Ollie only attached one page of the grievance procedure in the collective bargaining agreement in his memorandum, and left out the operative section that demonstrates that only the Union can proceed to arbitration. For example, Section 10.6 states that if the grievance is not resolved at an earlier step in the process, that "the UConn-AAUP, upon the request of the grievant, may proceed to arbitration." (Exhibit 2). This language is in sharp contrast to the other steps of the grievance procedure, wherein either the employee or the Union may advance the grievance. When arbitration is considered, the Union itself owns the grievance at that point and the individual employee is not a party to the arbitration. *See Taylor*

*v. State Bd. of Mediation & Arbitration*, 54 Conn. App. 550, 557–58 (1999) (citing *McCaffrey v. United Aircraft Corp.*, 147 Conn. 139, 142 cert. denied, 363 U.S. 854, (1960)).

As is apparent from the Complaint, Ollie alone has brought this case against the University and he is seeking pendente lite relief on behalf of himself. However, Ollie's status as a non-party to the arbitration renders him without standing. "The fact that an applicant for relief under § 422 [*sic*] is a party to a pending arbitration is the essential element conferring jurisdiction on the courts under the statute." *Metal Mgmt., Inc. v. Schiavone*, 514 F. Supp. 2d 227, 233 (D. Conn. 2007) (discussing plaintiff's standing); *see also Goodson v. State*, 232 Conn. 175, 180 (1995) (determining that trial court lacked jurisdiction because plaintiffs were not parties to a pending arbitration). Because Ollie lacks standing to pursue a remedy under Conn. Gen. Stat. § 52-422, the Court lacks jurisdiction to issue any pendente lite relief on his behalf. Therefore, his request for relief under that statute must be dismissed.

C.   **The Complaint Must Be Dismissed For Failure To Join A Necessary Party.**

As a party to the collective bargaining agreement that is the subject of the Complaint, the Union is a necessary party to this case. Ollie's failure to join the Union as a defendant in the case is thus a valid ground for dismissal. Pursuant to Fed. R. Civ. P. 12(b)(7), a defendant may move to dismiss an action where the plaintiff fails to join a necessary party under Fed. R. Civ. P. 19. Rule 19 states that a person who is subject to service of process and whose presence will not deprive the court of subject-matter jurisdiction must be joined as a party if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of that action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial

13

risk or incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19. Because Ollie has failed to join the Union, which as a party to the collective bargaining agreement has a contractual interest in Section 10.3, proceeding further with this case is improper.

In effect, Ollie's Complaint seeks to render Section 10.3 inoperative. That section, as with all of the provisions in the agreement, was negotiated between the University and the Union pursuant to the State Employee Relations Act ("SERA"). *See* Conn. Gen. Stat. §§ 5-270 *et seq*. Ollie has thus taken a position that is directly adverse to his Union by seeking to invalidate a term negotiated and agreed to by the Union through the collective bargaining process. As a party to the collective bargaining agreement, the Union has a vested interest and an obligation to uphold the terms therein, including Section 10.3. Although the Complaint is directed against the University, the Union is an equal party to the collective bargaining agreement, and Ollie's attack on Section 10.3 is as much a claim against the Union as it is against the University. Ollie is attempting to undo the bargain reached by the University and the Union even though he himself is not a party to the collective bargaining agreement. Because Ollie's claim is based on a contract to which the Union is a party, the Union must be joined as a defendant under Rule 19 or his claim must be dismissed.

This Court has held that "[d]eterminations under Rule 19 are to be made in the practical context of each particular case, leaving to the sound discretion of the court the question of how the action should best proceed under the circumstances." *McCooe v. Town of Manchester*, 101 F.R.D. 339, 340 (D. Conn. 1984) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)). Nevertheless, as discussed below, the courts have

enunciated certain principles for applying Rule 19, including the principle that a contracting party has an interest in the contract and that its or another party's interests may be impacted absent joinder. Numerous courts have required the joinder of all parties to a contract under Rule 19 when the contract is at issue, including cases decided under the more stringent "indispensable party" standard in the pre-2007 version of Rule 19.

As this Court has recognized, "the precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991); *see also CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 470 F. Supp. 2d 151, 157 (D. Conn. 2007). Other courts have agreed with the principle that all parties to a contract have an interest that may be impacted by an action addressing the validity of all or part of the contract. *See, e.g., Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 862 F. Supp. 995, 1003-04 (W.D.N.Y. 1994) (deeming a party to a franchise agreement to be an indispensable party in action seeking judicial interpretation of language of agreement). In the current case, the parties to the relevant contract are the University and the Union. Under the well-established legal principles recognized by the cases above, both the University and the Union are therefore necessary parties to this case.

This Court has previously addressed this issue in the context of a public sector collective bargaining agreement. *See McCooe v. Town of Manchester*, 10 F.R.D. 339 (D. Conn. 1984). In that case, a former employee brought a lawsuit against his former employer. *Id*. The lawsuit implicated a town pension ordinance that incorporated parts of the collective bargaining agreement between the employer and the employee's union. Id. Under those circumstances, the Court determined that "sound discretion merits the joinder of the union." *Id*. at 341. The Court's reasoning was as follows:

> Having negotiated the collective bargaining agreement provision herein challenged, as it is embodied in the town pension plan ordinance, the absent union clearly has an interest in this litigation, and is no less entitled to be heard. Adjudication of plaintiff's claim necessarily will adjudicate the union's right to enforce the contract it has negotiated. The court is entitled to hear the union's views.

*Id*. The court's reasoning in *McCooe* is even more applicable in the present action, as Ollie is basically seeking to invalidate a provision of the collective bargaining agreement between the University and the Union by claiming it is unlawful.

Similarly, the federal court for the Southern District of New York concluded that a union must be joined in *Ware v. Buffalo*, 186 F. Supp. 2d 324, 330-31 (S.D.N.Y 2001). There, the plaintiff challenged a policy of the city that was negotiated with the union regarding drug testing, but did not serve process on the union. *Id*. at 327-28. The court held that:

> [t]he court finds that [the union] is a necessary party to this litigation under Rule 19(a). The union is subject to service of process, and its joinder will not deprive the court of jurisdiction. Further, in the union's absence, complete relief cannot be accorded plaintiff. The union and the defendant City were signatories to the Policy and the Collective Bargaining Agreement. As one of his claims for relief, plaintiff seeks a judgment declaring the Policy null and void. Obviously the union, as the bargaining representative of its members, has a great interest in the court's determination."

*Id.* at 330.

Cases within the Second Circuit have followed suit. *See Robertson v. National Basketball Ass'n*, 389 F. Supp. 867, 879 (S.D.N.Y. 1975) ("A union should be joined when the suit will directly affect the union's interest in the operation of a bargaining agreement."); *Adams v. Delta Air Lines, Inc.*, 1997 WL 12803 (S.D.N.Y. 1997); *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y. 1973). In addition, courts in other jurisdictions have also mandated the joinder of the union in actions against an employer by an employee concerning the collective bargaining agreement. *See Neal v. System Board of Adjustment*, 348 F.2d 722 (8th Cir. 1965); *Hodgson v. School Bd., New Kensington-Arnold School District*, 56 F.R.D. 393 (W.D. Pa. 1972); *Morris v. Steele*, 253 F. Supp. 769 (D. Mass. 1966).

Having determined that the Union is a necessary party, the other factors in Rule 19 are readily addressed. The Union is subject to service of process, as it is incorporated in Connecticut and registered with the Connecticut Secretary of State.[5] Ollie is not claiming diversity jurisdiction, so the Union's joinder would not defeat the Court's subject matter jurisdiction. Based on the foregoing, all of the required factors under Rule 19 have been satisfied, and Ollie's failure to join the Union in this case is a ground for dismissal under Fed. R. Civ. P. 12(b)(7).

## IV. CONCLUSION

The Complaint fails to state a claim upon which relief can be granted. In addition, several jurisdictional issues preclude this Court from considering the claims raised in the Complaint. As a preliminary matter, the Court does not have subject matter jurisdiction under

---

[5] See https://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740, Business ID 0060861.

the doctrines of ripeness, mootness, and standing. However, even if the Court had subject matter jurisdiction, Ollie has failed to join a necessary party in the case. For any one of the foregoing reasons, the Court must dismiss the Complaint.

THE DEFENDANT,
UNIVERSITY OF CONNECTICUT


By: _____/s/_____
    Gabriel J. Jiran (ct23469)
    E-mail: gjiran@goodwin.com
    Christopher E. Engler (ct29610)
    E-mail: cengler@goodwin.com
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06103-1919
    Tel.: (860) 251-5000
    Fax: (860) 251-5215
    Its Attorneys

## CERTIFICATION

This is to certify that on this 27th day of December, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. The following Parties may access this filing through the Court's system:

Todd D. Steigman
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06104

/s/
Gabriel J. Jiran