UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN OLLIE | | Civil Action No.: 3:18-CV-02070 |
| Plaintiff, | | |
| v. | | |
| UNIVERSITY OF CONNECTICUT | | |
| Defendant | | December 27, 2018 |

## MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND APPLICATION FOR PENDENTE LITE RELIEF

### I.  INTRODUCTION

On December 17, 2018, the Plaintiff in this case, Kevin Ollie, filed a Complaint and an Emergency Motion for Preliminary Injunction and Application for Pendente Lite Relief without any notice to the Defendant, the University of Connecticut ("the University").  Together with this Memorandum in Opposition, the University has simultaneously filed a Motion to Dismiss the Complaint on several jurisdictional grounds, which would resolve this case.  In addition, the Court has already denied Ollie's request for emergency relief based on the failure to give the University notice of his filing.  However, the University is compelled to respond to the Motion in anticipation of the show cause hearing on December 28, 2018.  For the reasons that follow, Ollie has not satisfied the legal standards necessary to support his claim for injunctive relief.

### II.  FACTUAL BACKGROUND

The following statement of facts contains the factual allegations from Ollie's Complaint that are relevant to this Memorandum.  The University does not concede the facts or the legal conclusions as alleged in Ollie's Complaint.  Ollie was previously employed by the University

as the Head Coach of its Men's Basketball Program.  (Complaint at ¶ 8).  While employed by

the University, Ollie was a member of the University of Connecticut Chapter of the American

Association of University Professors ("the Union").  *Id.* at ¶ 16.  The University and the

Union are parties to a collective bargaining agreement.  *Id.* at ¶ 17.  The agreement contains a

grievance procedure for resolving disputes, as well as the provision that is the subject of this

case, Section 10.3.[1]  That section states as follows:

> If prior to seeking resolution of a dispute by filing a grievance under this
> contract, or while the grievance proceeding is in progress, a member seeks to
> resolve the matter in any other forum, whether administrative or judicial, the
> Board shall have no obligation to entertain or proceed with this grievance
> procedure.  For the purposes of this Agreement, however, the parties agree that
> a complaint filed by a UConn-AAUP member with the University of
> Connecticut's Office of Institutional Equity or Office of Audit Compliance and
> Ethics are internal investigatory procedures and the member shall retain all rights
> to proceed with the Article 10 grievance process.

*Id.* at ¶ 19.  The first sentence of the foregoing language has been in the collective bargaining

agreement since at least 2007, but the parties agreed to add the last sentence in 2017.  (Exhibit

1[2]).

On March 10, 2018, the University's Athletic Director, David Benedict, notified Ollie

that the University was initiating the process to terminate Ollie's employment.  *Id.* at ¶ 9.  On

April 24, 2018, Athletic Director Benedict issued a written recommendation to terminate

Ollie's employment.  *Id.* at ¶ 11.  The Union appealed Athletic Director Benedict's action to

University President Susan Herbst.  *Id.* at ¶ 12.  On June 19, 2018, President Herbst upheld

the termination of Ollie's employment.  *Id.* at ¶ 15.  The Union thereafter filed a grievance

---

[1] In his pleadings, Ollie refers to this provision as "Article 10.3."  However, the agreement does not contain any such article.  Instead, it has an Article 10 that includes several sections, including Section 10.3.  The University will therefore properly refer to this provision as "Section 10.3".
[2] Exhibit 1 contains the relevant provisions of a previous collective bargaining agreement.

7207290

regarding Ollie's termination pursuant to the grievance procedure in the collective bargaining agreement.  *Id.* at ¶ 20; *see also id.* at ¶ 17.  The grievance has since advanced to arbitration. *Id.* at ¶ 21.

On October 30, 2018, Ollie's attorney asked the University to waive Section 10.3 of the collective bargaining agreement if Ollie filed a discrimination claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") or the U.S. Equal Employment Opportunities Commission ("EEOC").  *Id.* at ¶ 36.  During subsequent communications, the University did not agree to Ollie's attorney's proposal.  *Id.* ¶¶ 37-40.  On December 16, 2018, the University's attorney informed Ollie's attorney that the University would not agree not to waive its rights under Section 10.3 if Ollie filed a claim with the CHRO or the EEOC.  *Id.* ¶ 43.  Notably, Ollie has not provided any information that the University said that it would invoke Section 10.3, nor does he allege that the University has actually invoked Section 10.3. For example, he only provided a written communication wherein the University declined to waive its rights under Section 10.3.  (Plaintiff's Memorandum of Law in Support of Emergency Motion for Preliminary Injunction and Application for Pendente Lite Relief ("Ollie Memorandum in Support"), Exhibit 3).  To date, Ollie has not filed a claim with the CHRO or the EEOC, and the statute of limitations for filing with the CHRO has expired based on Ollie's own inaction.  (Complaint at ¶ 31).

The foregoing are the operative facts that the Court should consider when reviewing Ollie's request for injunctive relief.  While the University disagrees with many of the other factual allegations contained in the Complaint, at least one allegation must be addressed in the context of this Memorandum because it is relevant to the relief requested.  Specifically, the

3

University does not recall that Ollie requested at any time that his potential discrimination claims be addressed in the arbitration.  (Complaint at ¶¶ 36, 41, and 42).  It is remarkable that Ollie would attest to the accuracy to such an allegation given that he was not a party to any conversations or communications between counsel related to the arbitration.

III.   **ARGUMENT**

    **A.**   **A Preliminary Injunction Is Inappropriate Because The Court Lacks Jurisdiction.**

As noted, the University has filed a Motion to Dismiss simultaneously with this Memorandum in Opposition.  The University's Motion to Dismiss challenges the Court's jurisdiction over this proceeding due to issues with ripeness, mootness, and standing.  The University's Motion to Dismiss also addresses the issue of nonjoinder of a necessary party. The Motion to Dismiss and accompanying Memorandum adequately address these issues, and the University's arguments are incorporated by reference and will not be repeated here. However, because the Court's jurisdiction has been challenged, proceedings on the preliminary injunction cannot go forward until the jurisdictional issues have been addressed.  *See Visual Sciences, Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981).  As the Second Circuit noted in *Visual Sciences*, "[w]here a challenge to jurisdiction is interposed on an application for a preliminary injunction the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits."  *Id.* (internal quotation marks and citations omitted). Ollie has not done so here, and therefore the Court should not proceed past the threshold jurisdictional issues.

### B.   Ollie Has Not Met The Standard For A Preliminary Injunction.

A party seeking a preliminary injunction must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Monserrate v. N.Y. State Senate*, 599 F. 3d 148, 154 (2d Cir. 2010) (internal quotation marks omitted).  Further, the moving party must also demonstrate that an injunction "is in the public interest." *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011).  A heightened standard is used, however, where an injunction is mandatory, or where granting the injunction will provide the moving party with substantially all the relief sought and the relief cannot be undone after a trial on the merits. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).  Under the heightened standard, the moving party must show a clear and substantial likelihood of success on the merits and that the injunction is in the public interest.  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citing *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)).

### 1.   This Issue Is Not Ripe For Adjudication And Therefore No Irreparable Harm Has Occurred.

In the present case, Ollie does not present a real or substantial controversy with regard to his claim for injunctive relief such that he has suffered irreparable harm.  The University has filed a Motion to Dismiss simultaneously with this Memorandum that discusses the ripeness doctrine from a subject matter jurisdiction perspective, and the University hereby incorporates that argument and will not repeat it here.  However, the issue of ripeness is equally relevant when considering Ollie's claim of irreparable harm.  The thrust of his

argument is that the Court should enjoin the University from invoking Section 10.3 of the collective bargaining agreement because it would prevent him from filing a charge of discrimination, or alternatively would deprive him of the right to pursue his arbitration. However, the University has <u>not</u> invoked Section 10.3, and Ollie has not even filed a charge of discrimination upon which the University could invoke Section 10.3.  In fact, the University has never stated that it will invoke Section 10.3, but has merely declined to waive its rights under that section.

In order to be justiciable, a cause of action must be ripe.  In other words, it must present "a real, substantial controversy, not a mere hypothetical question." *AMSAT Cable Ltd. v. Cablevision of Conn.,* 6 F.3d 867, 872 (2d Cir.1993).  A claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985).  As more fully developed in its Motion to Dismiss, the ripeness doctrine applies to Ollie's request for injunctive relief and deprives the Court of jurisdiction.  As a logical consequence, Ollie has not suffered irreparable harm if he does not have a ripe claim to assert.

    **2.**    **Even If This Court Has Jurisdiction, Ollie Cannot Demonstrate Irreparable Harm.**

Ollie's claim that he will suffer irreparable harm if the University invokes Section 10.3 of the collective bargaining agreement is based on two theories, both of which are insufficient to satisfy the standard for a preliminary injunction.  For example, Ollie first argues that he will suffer irreparable harm if he is unable to file a CHRO or EEOC charge.  This argument fails because Ollie has not been prevented from filing a charge with either agency, and even under the express language of Section 10.3, he is free to pursue his discrimination claims.  Of

6

course, Ollie has now placed himself in the position of letting the statute of limitations expire

on any claims he could bring with the CHRO, but that was his choice.  However, he still has

the ability to file a claim with the EEOC and to pursue his discrimination claim in that forum if

he so chooses.  Therefore, Ollie has both a forum and a remedy available to him for his

discrimination claim, and he has not suffered irreparable harm with regard to that claim.

     The focus of Ollie's claim of irreparable harm is really that if he files a discrimination

charge, that he <u>may</u> be prevented from arbitrating his termination under the collective

bargaining agreement.  However, he has not suffered irreparable harm under that theory

either.  As a preliminary matter, the Second Circuit has already determined that a contractual

provision that precludes arbitration where an employee has filed a discrimination charge is

valid and enforceable.  In *Richardson v. Commission on Human Rights and Opportunities*, 532

F.3d 114 (2nd Cir. 2008), the Second Circuit reviewed a contractual provision that stated as

follows:  "disputes over claimed unlawful discrimination shall be subject to the grievance

procedure but shall not be arbitrable if a complaint is filed with the Commission on Human

Rights and Opportunities arising from the same common nucleus of fact."  *Id*. at 118.  This

language was mandatory in nature, in that if an employee filed a charge with the CHRO, that

the grievance could not proceed to arbitration.  In contrast, Section 10.3 places the decision on

whether to proceed with the arbitration in the hands of the University and does not

automatically end the process.

     Despite the mandatory nature of the language in the *Richardson* case, the Second

Circuit still found that the contract provision was enforceable.  The Second Circuit noted that

the plaintiff had not prospectively waived any rights under Title VII, and remained free to file

a charge with the EEOC and subsequently pursue that claim in federal court.  *Id*. at 122.  Such is the exact situation presented by the facts of the current case.  Ollie has not waived any rights under Title VII, and can still pursue his claim of discrimination under that statute.  The University will discuss the *Richardson* case in more detail as it pertains to the likelihood of success prong of the injunction standard, but its holding demonstrates that Ollie has not suffered any irreparable harm if the University chooses to exert its rights under Section 10.3.

Even aside from the *Richardson* case, other factors demonstrate that Ollie has not suffered irreparable harm if he is precluded from arbitrating his case.  His sole claim of irreparable harm is that he will lose "an important right to seek redress for violations of the collective bargaining agreement", but he provides absolutely no detail as to what he means by that statement.  (Ollie Memorandum in Support, at 15).  He only cites to an Oregon Supreme Court case, but that case is contrary to the Second Circuit's decision in *Richardson* and is not binding on this Court.  *Portland State University Chapter of AAUP v. Portland State Univ.*, 352 Or. 697 (2012).  Ollie has left this Court to guess what "important right" he has lost the ability to assert under his collective bargaining agreement and how that loss constitutes an irreparable harm.  Ollie therefore has not satisfied his burden under the injunction standard.

Perhaps the reason Ollie does not provide any detail about his alleged irreparable harm under the collective bargaining agreement is because he has not suffered any.  According to his Complaint, Ollie challenged his termination under the collective bargaining agreement as not being for just cause. (Complaint, at ¶ ¶ 20 and 23).  He further states that his arbitration will "be limited to a claim that Defendant violated the operative collective bargaining agreement by terminating Plaintiff without just cause as defined by the collective bargaining agreement."

8

7207290

(Complaint, at ¶ 23). Ollie therefore is claiming that his termination was improper, but he can make that same claim if he were to file a charge of discrimination. He will not lose that ability even if the University chooses to invoke Section 10.3.

Ollie similarly is able to seek adequate relief for his claim of improper termination if he pursues a discrimination claim. As with any termination case, the primary remedy sought by the terminated employee is money damages. Ollie can still claim monetary relief if he is required to pursue his discrimination claim instead of pursuing arbitration under his collective bargaining agreement. For example, he can claim the same back pay under Title VII that he would claim in the arbitration, but he also has greater remedies available to him outside of the arbitration process, such as punitive damages and attorney fees. *See* 42 U.S.C. § 2000e-5(g), (k). This Court has previously held that even where a plaintiff was successful in an arbitration and was reinstated with full back pay, that the plaintiff still had additional remedies available to him outside of the arbitration under Title VII. *Brown v. Waterbury Board of Education*, 247 F. Supp. 3d 196, 206 (D. Conn. 2017). Therefore, Ollie will not be deprived of monetary remedies available to him if he is required to pursue his discrimination claim instead of arbitration.

In addition, the University fails to understand how allowing Ollie to pursue his claims in two different proceedings would be beneficial to him in the context of the irreparable harm standard. Both he and the University would have to expend additional time and resources by having to participate in two proceedings instead of one. The motivation behind his request for an injunction thus appears to be unrelated to a claim of irreparable harm, but instead an attempt to have two opportunities to claim damages against the University. As the Second

9

Circuit has held, an employer is not required to concede to this scenario where contract language precludes it. *Richardson*, 532 F.3d at 124.

Based on the foregoing, Ollie cannot demonstrate any harm that he will suffer if the University invokes Section 10.3.  He argues in the abstract that he will lose important rights available to him, but the reality is that he would not lose the right to pursue a discrimination claim, nor would he lose a specific right under the collective bargaining agreement that would be irreparable.  Consequently, Ollie cannot satisfy the first requirement for injunctive relief.

### 3.     Ollie Cannot Demonstrate A Likelihood of Success Or Serious Questions On The Merits.

In his argument on the likelihood of success on the merits of his claim, Ollie focuses exclusively on non-binding precedent from other jurisdictions to support his position, and only thereafter discusses binding Second Circuit precedent.  However, this approach is the opposite of how this Court must proceed when reviewing his claim.  The University will therefore begin with a discussion of the Second Circuit case law, which demonstrates that Ollie has no likelihood of success on the merits of his claim.

In *Richardson v. Commission on Human Rights and Opportunities*, 532 F.3d 114 (2d Cir. 2008), the Second Circuit reviewed a contractual provision that stated as follows: "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the Commission on Human Rights and Opportunities arising from the same common nucleus of fact." *Id*. at 118.  While this language is not the same exact language at issue in this case, the underlying issue is the same and was addressed by the Second Circuit.  For example, the plaintiff in *Richardson* claimed that the invocation of this contract language to avoid arbitration was a violation of Title VII.

Ollie makes that same claim in the present case, so the Second Circuit's analysis is applicable even though the factual background and specific language may be different.

In reviewing the contract language in *Richardson*, the Second Circuit first conducted an analysis of the interplay between the anti-retaliation provisions of Title VII and the "*Gardner-Denver* doctrine." The anti-retaliation provisions forbid discrimination against an employee who "has opposed any practice made an unlawful employment practice" under Title VII, or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). In contrast, the *Gardner-Denver* doctrine requires that a release or waiver of Title VII rights meet certain criteria, and that a collective bargaining agreement cannot waive an employee's rights to a judicial forum. *Richardson*, 532 F.3d at 121 (citations omitted).[3] The Second Circuit concluded that the language in the collective bargaining agreement did not violate either the anti-retaliation provisions or the *Gardner-Denver* doctrine.

The Second Circuit first found that the contract language passed muster under the *Gardner-Denver* doctrine. In so doing, the Second Circuit concluded that the doctrine "does not preclude a union and an employer from agreeing that employees must forego their right to arbitrate a grievance if they bring a lawsuit in federal court arising out of the same facts." *Id.* at 122. The Second Circuit noted that the plaintiff had not prospectively waived any rights under Title VII, and remained free to file a charge with the EEOC and subsequently pursue that claim in federal court. The Second Circuit further noted that the concept of precluding an arbitration from proceeding at the same time as a discrimination lawsuit was "a rather sensible

---

[3] The name of this doctrine comes from the U.S. Supreme Court case of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974).

11

outcome of the collective bargaining process." *Id.* This exact reasoning applies to the present case. The University and the Union collectively bargained over Section 10.3 and came to mutually agreeable language. The purpose of this language is to give the University the choice of whether to have two separate proceedings ongoing over an employee discipline, or whether to forego the arbitration process. As the Second Circuit noted, an employer may not want to be preparing an arbitration case at the same time as defending a discrimination claim, and the same is true for a union. However, this choice is not a violation of Title VII. *Id.* at 122-23.

The Second Circuit next turned its attention to the anti-retaliation provisions of Title VII, and similarly concluded that the contract language did not constitute retaliation for the assertion, or potential assertion, of protected rights. At the outset, the Second Circuit found that the election of remedies language in the collective bargaining agreement did not constitute an adverse employment action by either the employer or the union. The election of remedies provision qualified as a "reasonable defensive measure" by the employer to litigate discrimination claims in an effective and efficient manner, and the Second Circuit was unpersuaded that such a measure constituted an adverse employment action. Without this key element of Title VII's retaliation standard, the plaintiff's claim could not succeed. *Id.* at 124.

In support of his argument on the likelihood of success, Ollie relies primarily on a case from the Seventh Circuit Court of Appeals decided 16 years prior to *Richardson*. *EEOC v. Board of Governors*, 957 F.2d 424 (7th Cir. 1992). However, the Second Circuit considered this decision and specifically refused to follow it. *Richardson*, 532 F.3d at 126. The other cases cited by Ollie in support of the holding in *Board of Governors* are similarly not binding on this Court. While the University recognizes that other courts may come to different

conclusions on this issue, the law in the Second Circuit is that provisions such as Section 10.3 are enforceable. In addition, the United States Supreme Court ruling in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), also cited by Ollie, does not change this conclusion. As a preliminary matter, the *Burlington Northern* case involved a reassignment of job duties to an employee who had claimed sex discrimination, and had nothing to do with the issue in the present case. In addition, the Second Circuit decided *Richardson* two years <u>after</u> *Burlington Northern*, and specifically considered that decision in its analysis. *Richardson*, 532 U.S. at 118. Therefore, Ollie's claim that *Burlington Northern* should be considered by this Court in support of his argument is misguided.

Ollie has not sufficiently distinguished *Richardson* such that it would be inapplicable to the present case. For example, although the defendant in *Richardson* was the plaintiff's union, the Second Circuit spent considerable time discussing the underlying collective bargaining provision and its enforcement by the plaintiff's employer.[4] As the Second Circuit correctly stated, the plaintiff could not demonstrate that "agreeing to or adhering to the election-of-remedies provision constitutes an adverse employment action by either her employer or her union." *Id*. at 123. In addition, the difference in the election of remedies language in *Richardson* does not distinguish its holding.

The language in *Richardson* precluded an employee from simultaneously pursuing a discrimination claim with the CHRO and through the grievance procedure. As the Second Circuit noted, an employee could still file a charge with the EEOC. *Id*. at 124. However, the

---

[4] The nature of the claim against the employee's union in *Richardson* demonstrates that the Union representing Ollie is a necessary party to this proceeding. The University has briefed this issue in support of its Motion to Dismiss.

Second Circuit's holding was not limited to these specific facts.  The Second Circuit broadly held that an election of remedies provision is both a "sensible outcome of the collective bargaining process", and that such a provision is not an adverse employment action under Title VII.  *Id*. at 122-23.  The breadth of this holding is apparent based on the Second Circuit's reliance on its prior decision in *United States v. NYC Transit Authority*, 97 F.3d 672 (2d Cir. 1996).  In that case, the Second Circuit upheld a policy that completely precluded an employee from participating in an internal administrative process if the employee filed <u>any</u> litigation against the employer, or pursued a charge with a city, state, or federal anti-discrimination agency.  In reaching this conclusion, the Second Circuit noted that the policy was a reasonable defensive measure that allowed the employer to avoid "parallel and duplicative proceedings", and that the policy was therefore not retaliatory.  *Id*. at 677.

The Second Circuit has therefore held that an employer can rely on an election of remedies provision without running afoul of Title VII.  In *NYC Transit*, the provision was very broad and applied to any litigation filed by an employee.  In *Richardson*, the provision was more limited.  In the present case, the provision in Section 10.3 is also more limited because an employee can pursue an internal complaint of discrimination with the Office of Institutional Equity or Office of Audit Compliance and Ethics.  (Ollie Memorandum in Support, Exhibit 1). Despite the foregoing differences, the end result is the same:  an election of remedies provision is a reasonable defensive measure and is neither discriminatory nor retaliatory.  If the broad language in *NYC Transit* passed muster, then certainly a more limited version would do the same.

Based on the foregoing, Ollie cannot demonstrate a likelihood of success on the merits of his claim for injunctive relief.  The Second Circuit has already decided this issue and determined that language such as that in Section 10.3 is valid, enforceable, and not retaliatory. While other courts have admittedly come to a different conclusion, the *Richardson* case is binding on this Court.

### 4.     Neither The Balance Of Hardships Nor Public Policy Supports Injunctive Relief.

Aside from not being able to demonstrate a likelihood of success on the merits, Ollie also cannot establish that the balance of the hardships tips decidedly in his favor. *Monserrate v. N.Y. State Senate*, 599 F. 3d 148, 154 (2d Cir. 2010).  His argument on this factor is that he will suffer a significant hardship if he is required to forego his right to file a discrimination charge in order to maintain a right to pursue claims under the collective bargaining agreement. However, as discussed above, Ollie is neither required to forego his discrimination claim, nor would he suffer any harm or hardship if he pursued his discrimination claim instead of an arbitration.  To the contrary, both parties would suffer the hardship of having to litigate in two separate proceedings if the injunction is granted by the Court.  The Second Circuit considered this scenario in *Richardson*, and concluded that an election of remedies provision actually preserves valuable resources for the parties.  *Richardson*, 532 F.3d at 122.  Therefore, the balance of the hardships weighs in favor of upholding the enforceability of Section 10.3.

Ollie also cannot establish that an injunction in this case would be in the public interest, as is required by the injunction standard.  *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011).  Ollie does not specifically address this factor in his Memorandum. As such, he has not demonstrated any important public policy that would be furthered by

7207290

allowing an employee to pursue an arbitration under a collective bargaining agreement, while at the same time pursuing a claim of discrimination in another forum.  Therefore, he also fails on this factor of the injunction standard.

**C.      Ollie Has Not Met The Standard For Pendente Lite Relief.**

As an alternative to his request for injunctive relief, Ollie seeks relief under Conn. Gen. Stat. § 52-422.  However, he does not offer any new arguments in support of his claim under that statute, and merely repeats the same arguments used under his claim for an injunction.  While the grounds for defeating his claim under Conn. Gen. Stat. § 52-422 are similar to those presented under the injunction standard, some notable differences exist that are specific to the statute.

Ollie does not have standing to bring a claim under Conn. Gen. Stat. § 52-422 because he is not a party to the arbitration between the University and the Union.  The University has fully discussed this lack of standing in its Motion to Dismiss, and will not repeat its argument here.  However, the University notes that a discussion of the application of Conn. Gen. Stat. § 52-422 is unnecessary because Ollie is precluded from pursuing a remedy under the statute.

Even if Ollie had standing, he could not succeed.  Conn. Gen. Stat. § 52-422 states as follows:

> At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

16

An application for pendente lite relief is a special statutory proceeding, and a court only has jurisdiction if the essential conditions prescribed by the statute are satisfied. *Goodson v. State*, 232 Conn. 175, 180 (1995). Based on the language of the statute itself, a court may only make an order or decree "as may be necessary to protect the rights of the parties. . . ." Conn. Gen. Stat. § 52-422. The Connecticut Supreme Court has defined the word "necessary" to mean "'absolutely required' to protect the plaintiff's rights during the pendency of the arbitration proceeding." *New England Pipe Corp. v. Northeast Corridor Foundation*, 271 Conn. 329, 337 (2004) (quoting Webster's Third New International Dictionary definition of "necessary"). The party requesting the relief bears the burden of proof concerning what is "absolutely required" for an order under § 52-422. *Yankwitt v. Silver Golub & Teitell, LLP*, 2014 WL 7462562, *3 (Conn. Super. Ct. 2014).

In the present case, Ollie has failed to demonstrate that judicial intervention is absolutely required. In this sense, the standard under Conn. Gen. Stat. § 52-422 has a similar effect as the irreparable harm standard applicable to his request for an injunction. As a consequence, the same arguments apply to demonstrate that judicial intervention is not absolutely required. Although Ollie has, by his own inaction, lost the ability to file a charge with the CHRO, he still has the ability to file with the EEOC. In addition, he has adequate remedies available to him through that process above and beyond the remedies he may have in an arbitration, including the ability to request that the EEOC seek injunctive relief. *See* 42 U.S.C. § 2000e-5(g)(1). Additionally, Mr. Ollie has not presented this issue to the arbitrator. As observed by the Connecticut Superior Court in Yankwitt, the presentation of the issue to the arbitrator is an "initial step" toward seeking relief under Conn. Gen. Stat. § 52-422. *Yankwitt*,

2014 WL 7462562 at *5.  Without having ever presented the issue to the arbitrator, it is impossible for this Court to grant him relief under Conn. Gen. Stat. § 52-422.  Ollie thus cannot maintain a claim under Conn. Gen. Stat. § 52-422 on both procedural and substantive grounds.

### D.    Ollie's Request For Tolling Of The Statute Of Limitations Should Be Denied.

In his Complaint and his Emergency Motion for Preliminary Injunction and Application for Pendente Lite Relief, Ollie requests that the Court "[e]quitably toll the statute of limitations for Plaintiff to file claims under Title VII and CFEPA as of December 17, 2018, and equitably estop Defendant from asserting a statute of limitations defense." (Complaint, Prayer for Relief, ¶ 2; *see also* Motion, at 2).  This request seems to be based on Ollie's assertion that the Court should immediately intercede into this matter because the statute of limitations on a potential CHRO charge, and only a CHRO charge, was due to expire on December 17, 2018.  However, Ollie has previously asserted that the triggering event for his discrimination claim, which was his termination, occurred on or before April 3, 2018.  (Exhibit 2).[5]  Ollie further recognizes this triggering event in his Complaint when he alleges that the statute of limitations to file an EEOC charge could expire as early as January 4, 2019.  (Complaint at ¶ 31).  Using this same reasoning, the statute of limitations for filing a CHRO charge would have expired on October 3, 2018, long before Ollie filed the present Motion and Complaint.  This timing is significant in that Ollie cannot demonstrate that he was prevented from filing a charge with the

---

[5] Although beyond the scope of this Memorandum, the University could assert that the triggering event occurred even earlier when Ollie first received notice of the commencement of the termination process on March 10, 2018. (Complaint at ¶ 9).

CHRO since April 3, 2018, or that other equitable principles would apply to accord him the relief requested.

In his Memorandum of Law in Support of the Emergency Motion, Ollie focuses on equitable tolling and barely mentions estoppel. (Ollie Memorandum in Support, at 24). His discussion of equitable tolling is less than clear, but it appears that he has either abandoned his request for equitable estoppel or conflated the two distinct doctrines. In any event, neither equitable doctrine is appropriate here. The federal courts recognize that equitable remedies are extraordinary and should not be granted lightly. *See, e.g., Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976) ("We think that petitioners' arguments for tolling the statutory period for filing a claim with the EEOC during the pendency of grievance or arbitration procedures under the collective-bargaining contract are virtually foreclosed by our [prior] decisions . . .").

In the context of employment discrimination claims, the Second Circuit considers equitable tolling to be "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. New York City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (determining that equitable tolling of 300-day period for filing discrimination charge at EEOC was not warranted) (quotation marks and citation omitted). In summarizing the legal authority regarding when equitable tolling is appropriate, the Second Circuit has stated:

> "Equitable tolling is generally considered appropriate [1] where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; [2] where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or [3] where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. When determining whether equitable tolling is applicable, a

19

district court must consider whether the person seeking application of the
equitable tolling doctrine (1) has acted with reasonable diligence during the time
period she seeks to have tolled, and (2) has proved that the circumstances are so
extraordinary that the doctrine should apply."

*Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), *as*

*amended* (July 29, 2003) (upholding district court's decision not to equitably toll 300-day

period for filing discrimination charge at EEOC) (internal case citations and quotations

omitted; parenthetical numbers in original; bracketed numbers added for readability).

Although Ollie inexplicably disregards the Second Circuit's case law on this issue, the

governing law makes clear that equitable tolling is inappropriate in the present case.

None of the three situations identified in *Zerilli-Edelglass* in which the Second Circuit

would consider equitable tolling is applicable to Ollie's circumstances.  Far from having filed

an excusably defective pleading in a timely manner, it is undisputed that Ollie has not even

attempted to file a complaint with the CHRO or the EEOC alleging discrimination.  The first

situation is therefore not applicable.

With respect to the second situation, the Second Circuit considers the plaintiff's

knowledge of the cause of action and any "evidence of deception or intentional obfuscation" by

the defendant.  *Falso v. Gates Chili Cent. Sch. Dist.*, 408 Fed. Appx. 494, 496 (2d Cir. 2011).

Ollie has not alleged or proven any such deception or obfuscation.  Similarly, there is no

question that Ollie was fully aware of a potential cause of action arising from his termination at

the time it occurred.  He does not dispute receiving the March 10, 2018 letter initiating the

termination process, the April 24, 2018 letter recommending termination of Ollie's

20

employment, or the June 19, 2018 letter upholding the termination.[6] (Complaint, at ¶¶ 9, 11,

15). In addition, the Union raised concerns on Ollie's behalf regarding potential discrimination

in a letter dated May 10, 2018 and on which Ollie was copied, indicating that Ollie was on

notice as early as that date of a potential cause of action. *Id.* at ¶ 13. Moreover, Ollie was

personally represented by employment counsel at least as early as April 3, 2018.[7] (Exhibit 2).

Finally, the third situation is not present here. Ollie has not claimed that he has a medical or

mental impairment which would prevent him from meeting the statute of limitations. This case

therefore does not fall within any of the categories in which the Second Circuit applies the

doctrine of equitable tolling.

Turning to the two factors noted in *Zerilli-Edelglass*, Ollie has failed to produce

supporting evidence on either factor. With respect to the first factor, Ollie has not

demonstrated that he has exercised "reasonable diligence" to preserve any discrimination

claim. Instead, he allowed months to pass without doing anything to advance his

discrimination claims. The Complaint and Motion that he filed with this Court on December

17, 2018, do not constitute reasonable diligence such as would justify equitable tolling. After

all, Ollie waited until after the close of business to file the Complaint and Motion on the day

that, according to his pleadings, constituted the final day of the 180-day statute of limitations

for filing a charge at the CHRO. (Complaint, at ¶ 31). Allowing the statute of limitations to

---

[6] Furthermore, Ollie's receipt of these notifications is established by the allegations in the Complaint. Ollie alleges that a University representative "notified" Ollie with respect to the March 10, 2018 letter. (Complaint, at ¶ 9). His receipt of the April 24, 2018 letter is conceded by his allegation that he appealed the letter. *Id.* at ¶ 11. Finally, his receipt of the June 19, 2018 letter is demonstrated by the Union filing a grievance over the letter on Ollie's behalf. *Id.* at ¶ 20.

[7] The experience and competence of Ollie's personal attorneys have received judicial recognition. *See Charron v. Town of Griswold*, 48 Conn. L. Rptr. 476, at *3 (Conn. Super. Ct. Aug. 21, 2009). Ollie cannot plausibly argue that these veteran employment attorneys were unaware of how to file a charge with the EEOC or the CHRO, or how to otherwise preserve his rights.

7207290

expire is the epitome of unreasonable negligence.  If Ollie truly thought equitable tolling was warranted, he could have filed this action long before the statute of limitations expired.  Ollie's belated effort to resurrect his claims cannot satisfy the courts' demanding standard for equitable tolling.

Nor has Ollie identified any evidence or case law that would support a finding that "the circumstances are so extraordinary that the doctrine should apply."  *See Zerilli-Edelglass*, 333 F.3d at 81.  In fact, Ollie has failed to identify a single authoritative case with similar circumstances in which the court applied equitable tolling.  Disregarding the Second Circuit authority discussed above, Ollie instead cites to an array of cases but is unable to explain how any of them supports the application of equitable tolling here.  A brief review of the cases cited by Ollie demonstrates their inapplicability:

- *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981) addresses neither equitable tolling nor equitable estoppel and is therefore irrelevant.

- *Zipes v. TWA, Inc.*, 455 U.S. 385 (1982) simply stands for the proposition that the statutory timeframe for filing a Title VII charge with the EEOC is theoretically subject to equitable tolling in the appropriate circumstances.  *Zipes* neither applies equitable tolling nor sets forth a standard for when tolling is appropriate.

- *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981), in addition to being from another circuit and therefore not authoritative here, expressly declines to apply equitable tolling or equitable estoppel.  *Naton*'s brief discussion of the doctrines demonstrates that neither applies to the present facts: equitable tolling considers "the plaintiff's excusable ignorance of the limitations period," which

22

7207290

ignorance Ollie cannot credibly claim given his ongoing representation by experienced employment counsel; and equitable estoppel considers whether the employer misled or deceived the employee into not knowing when the limitations period expired.

- *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965) does not involve employment discrimination and has no bearing on the statute of limitations for filing a charge with the EEOC or the CHRO.  Furthermore, the decision to toll in *Burnett* rested on two factors that are absent here: the plaintiff there had "not slept on his rights," whereas here Ollie did nothing to advance his claims; and the plaintiff there timely filed his case but in the wrong court, whereas here Ollie has not filed anything. *Burnett* does not support Ollie's arguments.

- *Haekal v. Refco, Inc.*, 198 F.3d 37 (2d Cir. 1999) also does not involve the antidiscrimination statutes.  Ollie cites this case for its reference to preventing "unfairness to a diligent plaintiff," but that principle is inapplicable here given Ollie's total lack of diligence in pursuing his claims.

The same analysis applies under Connecticut state law, as "Connecticut courts look to federal law for guidance in interpreting state antidiscrimination laws" when considering equitable tolling. *Williams v. Comm'n on Human Rights & Opportunities*, 67 Conn. App. 316, 329 (2001).  Furthermore, Connecticut courts agree with the Second Circuit that equitable tolling should be rarely applied and that "time limits will not be tolled absent some behavior of the employer designed to delay the filing of the complaint or fraud." *Id.* (citing *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985) (considering

whether defendant acted to prevent plaintiff from discovering necessary facts for cause of action in order to delay filing)).  As discussed above and below, it is undisputed that Ollie has been fully aware of the pertinent facts for many months.  In addition, Connecticut courts recognize that a plaintiff's ongoing representation by an attorney will undermine a claim for equitable tolling.  *See id.* at 328 ("There is a strong tendency not to apply the doctrine of equitable tolling when a party is represented by an attorney.").  Neither federal nor state case law supports Ollie's request for equitable tolling.

Ollie's Memorandum is similarly unavailing with respect to the doctrine of equitable estoppel.  He appears to conflate equitable estoppel with equitable tolling, using the two terms interchangeably, and fails to identify evidence or authoritative and on-point case law in support of applying equitable estoppel in this case.

The Second Circuit has stated that "[t]o invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment."  *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995); *Kavowras v. New York Times Co.*, 328 F.3d 50, 56-57 (2d Cir. 2003); *see also Paneccasio v. Unisource Worldwide, Inc.*, 2006 WL 2128647, at *4 (D. Conn. July 26, 2006) (quoting *Buttry*, *supra*, and applying standard to statute of limitations for filing charge with EEOC).  Under this standard, the equitable estoppel doctrine is plainly not applicable here.  Ollie has not alleged any misrepresentations of fact by the University with respect to his employment status.  Having thus failed to prove or even allege a misrepresentation, Ollie cannot satisfy the relevant standard for equitable estoppel, and it would be inappropriate for the Court to apply it here.

Rather than applying a correct standard for equitable estoppel, Ollie quotes a legal standard from an unpublished case outside the employment context from the District of Oregon which itself relies on Arizona and California state case law.  (Ollie Memorandum in Support, at 26 (quoting *M.N.O. v. Magana*, 2006 WL 559214, at *2 (D. Or. March 6, 2006))).  The inapplicability of this standard is self-evident.  In addition, the standard set forth in *M.N.O.* is no more helpful to Ollie than the Second Circuit's standard addressed above.  Although the *M.N.O.* standard considers whether "the defendant made specific promises, threats or inducements that prevented the plaintiff from filing suit," the case goes on to clarify that the threats it is concerned with are "threats to [the plaintiff's] physical safety."  *M.N.O.*, *supra*, at *14.  Although Ollie offers no analysis of the *M.N.O.* standard, any argument that it applies to Ollie's circumstances must fail.  At most, Ollie alleges that the University has refused to waive its contractual right to discontinue an arbitration proceeding if Ollie files a charge with the CHRO or the EEOC.  (Complaint at ¶¶ 56, 72).  Such conduct falls far short of a threat of physical harm, as required by *M.N.O.*

Ollie later cites another case for the same proposition.  (Ollie Memorandum in Support, at 27) (citing *Bilka v. Pepe's Inc.*, 601 F. Supp. 1254, 1256-57 (N.D. Ill. 1985)).  The court in *Bilka* addressed a motion to dismiss and was therefore limited to taking the plaintiff's vague allegations at face value.  One of those allegations was that "agents of Pepe's made threats to Bilka warning him against taking any legal action."  *Id*. at *1256.  The court noted that "[t]he complaint does not disclose what the nature of these threats were."  *Id*.  Unlike in *Bilka*, the allegations here are clearer and more specific.  Specifically, Ollie has alleged simply that the

University refused to waive its contractual right under Section 10.3.  Ollie does not allege any "threat" as that term is used in *M.N.O.* or *Bilka*, and therefore these cases are inapposite.

The remainder of Ollie's discussion regarding the statute of limitations cites to an assortment of cases from outside the Second Circuit, some addressing equitable tolling and some addressing equitable estoppel.  (Ollie Memorandum in Support, at 26-28).  None of these cases supports Ollie.  Those that discuss equitable tolling turn on whether the defendant deceived or misled the plaintiff with respect to the nature of an employment action.  *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292-93 (7th Cir. 1986); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), *abrogated in part by TRW Inc. v. Andrews*, 534 U.S. 19 (2001); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654 (D. Md. 2011); *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963 (4th Cir. 1982) (equitable remedy not proper "absent some employer conduct likely to mislead an employee into sleeping on his rights"); *O'Malley v. GTE Service Corp.*, 758 F.2d 818, 822 (2d Cir. 1985).  These cases thus track the second category of equitable tolling cases addressed by the Second Circuit in *Zerilli-Edelglass*.  As discussed above, Ollie has not claimed that he was deceived or misled by the University.  These cases therefore do not control here.

Finally, Ollie relies heavily on an unpublished decision from an Illinois federal court.  (Ollie Memorandum in Support, at 27-28 (discussing *E.E.O.C. v. Bd. of Governors of State Colls. & Univs.*, 1993 WL 623312 (N.D. Ill. May 12, 1993)))[8].  This decision is the progeny of the Seventh Circuit's decision of the same name which, as discussed at length above, the Second Circuit has specifically refused to follow.  Given that the Seventh Circuit's reasoning is

---

[8] Ollie cites this decision as being dated "May 11, 1993."  Westlaw indicates that the correct date is May 12, 1993.

not authoritative law in the Second Circuit, a trial court's interpretation of that reasoning on remand is similarly unpersuasive here.

In short, Ollie has not demonstrated why the Court should equitably toll the statute of limitations or why the University should be equitably estopped from raising the statute of limitations as a defense, particularly when Ollie has already allowed one limitations period to expire. The evidence and the legal authority both indicate that these equitable doctrines are inapplicable here. Ollie's attempt to circumvent the statutory deadlines and to avoid the consequences of his own failure to advance his claims should not succeed.

## IV.    CONCLUSION

Ollie cannot succeed in his request for injunctive relief. As explained in the University's Motion to Dismiss and the accompanying Memorandum, this Court lacks jurisdiction even to consider his request, which should end the analysis at the outset. However, even if the Court had jurisdiction, Ollie has failed to satisfy the requisite legal standard for obtaining injunctive relief. He will not suffer irreparable harm if the University invokes Section 10.3 of the collective bargaining agreement, he does not have a likelihood of success on the merits of his arguments, and the balance of the hardships do not tip in his favor. Further, he has made absolutely no argument that an injunction would be in the public interest. In addition to the foregoing, Ollie has not demonstrated that the statute of limitations on his alleged discrimination claim should be tolled.

For all of the foregoing reasons, the University respectfully requests that the Court deny Ollie's Motion and dismiss his Complaint.

7207290

THE DEFENDANT,
UNIVERSITY OF CONNECTICUT


By: _____/s/_____
     Gabriel J. Jiran (ct23469)
     E-mail: gjiran@goodwin.com
     Christopher E. Engler (ct29610)
     E-mail: cengler@goodwin.com
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103-1919
     Tel.: (860) 251-5000
     Fax: (860) 251-5215
     Its Attorneys

7207290

## <u>CERTIFICATION</u>

This is to certify that on this 27th day of December, 2018, a copy of the foregoing was

filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  The following Parties may access this filing through the

Court's system:

      Todd D. Steigman
      Madsen, Prestley & Parenteau, LLC
      402 Asylum Street
      Hartford, CT 06104

               _____/s/_____
                  Gabriel J. Jiran

7207290