UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KEVIN OLLIE** | Civil Action No.: 3:18-CV-02070 |
| Plaintiff, | |
| v. | |
| **UNIVERSITY OF CONNECTICUT** | |
| Defendant | January 18, 2019 |

## REPLY IN SUPPORT OF MOTION TO DISMISS

On January 14, 2019, Plaintiff Kevin Ollie filed his Opposition to Motion to Dismiss ("Ollie Opp. To Motion To Dismiss") in this case, the majority of which consists of verbatim duplications of arguments made in his Memorandum of Law in Support of Emergency Motion for Preliminary Injunction and Application for Pendente Lite Relief ("Ollie Memo. In Supp. Of Inj."). Many of these arguments do not directly address the Motion to Dismiss filed by the University of Connecticut ("the University"), but are instead focused on Ollie's request for injunctive relief. The University has already addressed these arguments in its Memorandum in Opposition to Motion for Preliminary Injunction and Application for Pendente Lite Relief ("Univ. Memo. In Opp. To Inj."), and will not repeat those arguments here as they do not pertain to the Motion to Dismiss. However, before discussing the arguments relevant to the Motion to Dismiss, the University is compelled to address what appears to be a change in theory by Ollie in this case.

The original Complaint seeks an order that Section 10.3 of the collective bargaining agreement violates Title VII, an injunction prohibiting the University from asserting its rights under Section 10.3, and tolling of the statute of limitations for Ollie to file an administrative

7207290

complaint related to his termination. (Complaint at ¶ 3). The focus of the Complaint thus relates to Ollie's claim that he should be able to challenge his termination as discriminatory without waiving his right to proceed with an arbitration over his termination. (Complaint at ¶¶ 24-34, 44, 47-49, 60, 65, 74, 76-78). However, in a surprising reversal, Ollie states in his Opposition to the Motion to Dismiss that this case is limited in scope, and that any filing with the EEOC or CHRO "would not seek to resolve or adjudicate or remedy any discrimination or retaliation claims associated with the termination of Mr. Ollie's employment". (Ollie Opp. To Motion To Dismiss at p. 8 and Exhibit 4) (emphasis added). If such is the case, then Ollie has completely nullified the basis for his request for injunctive relief. For example, Section 10.3 becomes irrelevant because Ollie now concedes that he will not be seeking to address his termination in a forum other than arbitration. (Complaint at ¶ 19). Further, the Court would have no reason to toll the applicable statute of limitations for a discrimination claim, because his request for that tolling relates solely to his termination.[1]

If Ollie truly concedes that he will not, or cannot, challenge his termination at the EEOC or CHRO in any way, then this Court is left without a basis to consider his request for injunctive relief. The whole premise of his Complaint is that he should be able to pursue claims related to his termination through both his pending arbitration and simultaneously by filing a charge of discrimination. If he has abandoned that premise, then the Court has no issue to decide in this case. While the foregoing would be dispositive of this case, the University will respond to Ollie's other arguments opposing the Motion to Dismiss.

---

[1] Notably, the Court has already denied Ollie's request to toll the statute of limitations at the initial injunction hearing in this case.

7207290

I.     **FAILURE TO STATE A CLAIM**

The University's Motion to Dismiss is based in part on Ollie's failure to state a claim, as the preliminary injunction and equitable relief sought by Ollie's Complaint are not independent causes of action. Ollie has not denied this legal conclusion, and he has not challenged the Court's ruling denying the tolling of the applicable statutes of limitations. In addition, Ollie has seemingly not opposed dismissal of his claim under the Connecticut Fair Employment Practices Act or for pendente lite relief. The University therefore will not address those claims, as they should be deemed abandoned and dismissed for failure to state a claim.[2]

In an attempt to avoid dismissal of the remainder of his Complaint, Ollie asserts that he intended to state a claim for a violation of Title VII, thereby providing a cause of action for this Court to consider. (Ollie Opp. To Motion to Dismiss, at p. 9). Even if the Complaint could be construed as asserting a claim under Title VII, the Complaint would still be subject to dismissal because Ollie has not exhausted his administrative remedies under Title VII. It is well-settled that "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court . . ." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Failure to exhaust the available administrative remedies before bringing a cause of action necessitates dismissal. *Hoffman v. Williamsville Sch. Dist.*, 443 Fed. Appx. 647, 650 (2d Cir. 2011). Specifically, Title VII requires that a complainant first bring a discrimination claim to the EEOC. *See* 42 U.S.C. § 2000e-5. The complainant may alternatively bring such a claim to a state anti-discrimination agency. *See* 29 C.F.R. § 1601.13(b).

---

[2] To the extent that the Court considers these claims, the University relies on the arguments made in its Motion to Dismiss.

Ollie concedes that he has failed to exhaust his administrative remedies, as he has not filed a claim with either the EEOC or the CHRO. (Ollie Opp. To Motion To Dismiss, at p. 23). This failure to exhaust is dispositive of his claim, and his argument that he is not subject to the exhaustion requirement fails. The cases to which he cites for this proposition are significantly distinguishable, as the plaintiffs in each of those cases had already filed a charge with the EEOC prior to initiating a federal lawsuit. The plaintiffs thus had taken the critical first step in exhausting their administrative remedies. In contrast, Ollie proposes that he can completely ignore the administrative process established under federal law and bring his claim directly in court. This result is not supported by Title VII or by any of the cases cited by Ollie. Consequently, the Complaint must be dismissed for failure to state a claim because he has not exhausted his administrative remedies.[3]

## II. RIPENESS

Ollie argues that his claim is ripe, even though he has not filed an administrative complaint of discrimination and even though Section 10.3 has not been invoked, because his right to file a discrimination complaint is being "chilled" by Section 10.3. In support of that argument, he cites primarily to several First Amendment cases. However, those cases applied the chilling theory as a relaxed ripeness standard in circumstances involving a pre-enforcement challenge to a statute under the First Amendment. In each of those cases, the court held that the plaintiff's challenge was ripe, even though the statute had not been enforced against the plaintiff, because the plaintiff's free speech rights were being chilled by an "actual and well-founded fear" of enforcement of the statute. *See Virginia v. American Booksellers Ass'n, Inc.*,

---

[3] Ollie notes that he has only focused on Title VII, and has apparently abandoned a claim under the Connecticut Fair Employment Practices Act. (Ollie Opp. To Motion To Dismiss, at p. 9, fn. 2).

484 U.S. 383 (1988); *National Org. for Marriage Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013); *Vermont Right to Life Committee, Inc v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000); *Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013); *New York State Bar Ass'n v. Reno*, 999 F. Supp. 710 (N.D.N.Y. 1998).

In the First Amendment context, plaintiffs are afforded the utmost protection from censorship and other restrictions of their free speech rights. As a result, courts have utilized a less stringent ripeness standard in order to protect those rights. *See, e.g., Reno*, 999 F. Supp. at 715 ("The customary ripeness analysis is, however, relaxed somewhat in circumstances involving a facial challenge implicating the First Amendment."); *New Mexicans for Bill Richardson v. Gonzalez*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Martin Tractor Co. v. Federal Election Comm'n*, 627 F.2d 375, 380 (D.C. Cir. 1980) ("[I]n such [First Amendment] cases the ripeness doctrine has been more loosely applied."). In each of the First Amendment cases cited by Ollie, the plaintiffs were subject to either civil or criminal consequences if they engaged in the speech at issue because they would be violating a statute. The courts utilized a relaxed ripeness standard in order to permit the plaintiffs to challenge the statutes at issue without having to first violate the statutes and suffer the consequences. Such is not the case here, as Ollie is not in the position of having to choose between violating a statute and exercising an alleged right. In addition, Ollie has not cited to any cases where the relaxed ripeness standard has been applied to a Title VII claim, and the University is unaware of any such case.

The one other case cited by Ollie on this issue, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), did not involve the First Amendment but is also distinguishable. That

5

case involved a unique situation under a license agreement for the manufacture and sale of pharmaceuticals. The agreement required the petitioner to pay royalties to the respondent if certain drugs were covered by the agreement. If the petitioner failed to pay the royalties, then it would be liable for treble damages and attorney fees, as well as being enjoined from selling the drug. At the time of the license agreement, the petitioner manufactured and sold a drug that was not covered by the license agreement. Several years later, the respondent asserted that the drug became covered by the agreement and demanded that the petitioner pay royalties. The petitioner disagreed, but paid the royalties because its business would have been devastated if it had to pay treble damages and lost the ability to sell the drug, which accounted for more than 80 percent of the petitioner's sales. *Id.* at 121-22. The petitioner sought a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that the drug was not covered by the license agreement. The Supreme Court thus had to review the Declaratory Judgment Act and cases thereunder to determine if a "case of actual controversy" existed under the terms of the Act. *Id.* at 122.

The *MedImmune* decision is not only factually distinguishable from the current case, but it is also extremely narrow in scope. The Supreme Court found that the case was justiciable under the express terms of the Declaratory Judgment Act, holding that the petitioner was not required to breach the license agreement in order to obtain declaratory judgment. *Id.* at 137. The rationale was that the petitioner did not have to subject itself to significant civil penalties and an injunction in order to enforce its rights. In this respect, the *MedImmune* decision is similar to the First Amendment cases cited by Ollie, which held that an individual need not suffer the consequences of violating a law prior to seeking to protect his or her free

6

speech rights. In the present case, Ollie is not the subject of any civil or criminal penalties if he files a claim with the CHRO or the EEOC, and is not required to violate a law by doing so. Therefore, any analogy between the cases cited by Ollie and the present case actually weighs in favor of the University on this issue. Ollie is not remotely in the same situation as any of the plaintiffs in those cases.

Based on the foregoing, Ollie has not demonstrated that this Court should deviate from the well-established standard for ripeness and create a new legal standard that does not currently exist for his Title VII claim. Under the traditional ripeness standard, he must demonstrate at the outset that he has suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Ollie has not suffered any injury because he has not filed a claim of discrimination, and the University thus has not had any reason to invoke Section 10.3. While the University has invoked that section in a prior case, the language in Section 10.3 is discretionary for a reason. The University has the latitude to decide whether it will invoke the section based on each individual case and has not waived that right. In this case, the University cannot assess whether to invoke Section 10.3 because Ollie has not filed a discrimination claim. However, the mere existence of the language in Section 10.3 is not an injury in fact that would make this case ripe for adjudication.

### III.    MOOTNESS

At the time that the University filed its Motion to Dismiss, it argued that any claim that Ollie could bring under the state anti-discrimination laws would be moot because the applicable statute of limitations had expired. The theory is that mootness deprives the courts of subject matter jurisdiction even if the matter was an active claim when a complaint was filed. *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *2 (D. Conn.

7

Mar. 15, 2017) (internal quotations omitted). In other words, "[w]hen the issues in dispute between the parties are no longer live, a case becomes moot." *Tanasi v. New All. Bank*, 786 F.3d 195, 198 (2d Cir. 2015), as amended (May 21, 2015) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005)). Given the passage of time between the filing of the University's Motion and the filing of this Reply, the theory of mootness has now deprived the Court of subject matter jurisdiction over Ollie's claim under Title VII. As Ollie has alleged in his Complaint, the time for him to file with the EEOC expired as early as January 4, 2019. (Complaint at ¶ 31). Consequently, the same mootness argument applies to his Title VII claim and dismissal is appropriate.

## IV.   FAILURE TO JOIN A NECESSARY PARTY

Without reference to Fed. R. Civ. P. 19, without citation to a single case in support of his position, and without addressing the numerous decisions cited by the University, Ollie claims that he has not failed to join a necessary party. His only argument is that he does not seek to invalidate Section 10.3, and that he is instead focusing on the University's potential invocation of Section 10.3. However, his argument is inconsistent with his own position previously in this case. For example, the Complaint specifically requests that this Court issue an order that Section 10.3 violates Title VII. (Complaint at ¶ 3). In addition, he devotes numerous pages in his Opposition in this case to the argument that Section 10.3 is a violation of Title VII and is invalid. (Ollie Opp. To Motion To Dismiss at pp. 9-20). Ollie has further included a section arguing that Section 10.3 is not a lawful contract provision. (Ollie Opp. To Motion To Dismiss at pp. 20-22).

Regardless of how Ollie wants to characterize his position, he cannot escape the conclusion that he is attacking the validity and applicability of Section 10.3. The language of

that section allows the University to decide whether to proceed with an arbitration in the event that an employee pursues a claim in another forum, and Ollie argues that the University does not have that option. Ollie is effectively requesting this Court to rewrite Section 10.3 to say that the University cannot choose to forego arbitration if an employee files a discrimination claim. As a party to the collective bargaining agreement, the University of Connecticut Chapter of the American Association of University Professors ("the Union") has an interest in the validity of a contract provision that it negotiated and agreed to with the University. By definition, the Union is a necessary party. *See McCooe v. Town of Manchester*, 101 F.R.D. 339 (D. Conn. 1984); *Ware v. Buffalo*, 186 F. Supp. 2d 324, 330–31 (S.D.N.Y 2001); *Robertson v. National Basketball Ass'n*, 389 F. Supp. 867, 879 (S.D.N.Y. 1975) ("A union should be joined when the suit will directly affect the union's interest in the operation of a bargaining agreement."); *Adams v. Delta Air Lines, Inc.*, 1997 WL 12803 (S.D.N.Y. 1997); *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y. 1973). Ollie's failure to join the Union thus mandates dismissal under Fed. R. Civ. P. 12(b)(7).

## V.   CONCLUSION

For all of the foregoing reasons, the University respectfully requests that the Court grant its Motion to Dismiss. In addition, the University reserves its right to respond to any request for leave to amend the Complaint filed by Ollie pursuant to Fed. R. Civ. P. 15, as is requested in his Opposition.

7207290

THE DEFENDANT,
UNIVERSITY OF CONNECTICUT

By: _____/s/_____
    Gabriel J. Jiran (ct23469)
    E-mail: gjiran@goodwin.com
    Christopher E. Engler (ct29610)
    E-mail: cengler@goodwin.com
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06103-1919
    Tel.: (860) 251-5000
    Fax: (860) 251-5215
    Its Attorneys

## CERTIFICATION

This is to certify that on this 18th day of January, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. The following Parties may access this filing through the Court's system:

Todd D. Steigman
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06104

_____/s/_____
Gabriel J. Jiran

7207290